FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757
Honorable Daniel J.
Bissett
Branch 6

**STATE OF WISCONSIN**         **CIRCUIT COURT**         **WINNEBAGO COUNTY**
                              **BRANCH _____**

---

**JOHN DOE,**

                         Plaintiff,

-vs-

**BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN SYSTEM**
Andrew S. Peterson, Regent President
1860 Van Hise Hall
1220 Linden Drive
Madison, WI  53706,

**UNIVERSITY OF WISCONSIN OSHKOSH**          Case No. 19-CV-_____
800 Algoma Boulevard                         Classification Code No. 30107, 30704
Oshkosh, WI  54901;

**ANDREW LEAVITT,** in his individual and official
capacities,
800 Algoma Boulevard
Oshkosh, WI  54901;

**SHAWNA KUETHER,** in her individual and official
capacities,
N1126 Glennview Drive
Greenville, WI  54942-8782; and

**ABIGAIL K. SYLVIA,** in her individual and official
capacities,
2822 Pine Ridge Road
Oshkosh, WI  54904-8480;

                         Defendants.

---

## SUMMONS

---

**THE STATE OF WISCONSIN**
To each person or entity named above as a defendant:

   You are hereby notified that the **plaintiff** named above has filed a lawsuit or other legal

action against you.  The **complaint**, which is attached, states the nature and basis of the legal action.

07505851.WPD.1                    Page 1 of 2

Within **forty-five (45)** days of receiving this **summons** you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the **complaint**. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Clerk of Courts for **Winnebago** County, whose address is **415 Jackson Street, Oshkosh, WI 54901**, and to **Peter J. Culp** of the Dempsey, Edgarton, St. Peter, Petak & Rosenfeldt Law Firm, the plaintiff's attorney, whose address is **210 North Main Street, Suite 100, P. O. Box 886, Oshkosh, WI 54903-0886**. You may have an attorney help or represent you.

If you do not provide a proper answer within **forty-five (45)** days the Court may grant judgment against you for the award of money or other legal action requested in the **complaint**, and you may lose your right to object to anything that is or may be incorrect in the **complaint**. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you now own or in the future, and may also be enforced by garnishment or seizure of property.

> **DEMPSEY EDGARTON, ST. PETER, PETAK, & ROSENFELDT LAW FIRM**
> Attorneys for the **Plaintiff**
>
> Electronically signed by Peter J. Culp
> Peter J. Culp
> Wisconsin Bar No. 1022595

**ADDRESS:**
210 North Main Street, Suite 100
Oshkosh, Wisconsin 54903-0886

Telephone:      920-235-7300
Facsimile:      920-235-2011
Email:          peterc@dempseylaw.com

Dated:          September 11, 2019

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757
Honorable Daniel J.
Bissett
Branch 6

**STATE OF WISCONSIN**     **CIRCUIT COURT BRANCH \_\_\_\_\_**     **WINNEBAGO COUNTY**

---

**JOHN DOE,**

Plaintiff,

-vs-

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM**
Andrew S. Peterson, Regent President
1860 Van Hise Hall
1220 Linden Drive
Madison, WI 53706,

**UNIVERSITY OF WISCONSIN OSHKOSH**
800 Algoma Boulevard
Oshkosh, WI 54901;

Case No. 19-CV-_____
Classification Code No. 30107, 30704

**ANDREW LEAVITT,** in his individual and official capacities,
800 Algoma Boulevard
Oshkosh, WI 54901;

**SHAWNA KUETHER,** in her individual and official capacities,
N1126 Glennview Drive
Greenville, WI 54942-8782; and

**ABIGAIL K. SYLVIA,** in her individual and official capacities,
2822 Pine Ridge Road
Oshkosh, WI 54904-8480;

Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiff, John Doe, by his attorneys, Dempsey, Edgarton, St. Peter, Petak & Rosenfeldt Law

Firm, as and for his complaint against the Defendants, Board of Regents of the University of

Wisconsin System (hereinafter referred to as "the Board of Regents"), the University of Wisconsin

07505508.WPD.1               Page 1 of 33

Oshkosh (hereinafter referred to as "the University"), Andrew Leavitt (hereinafter referred to as "Chancellor Leavitt"), Shawna M. Kuether (hereinafter referred to as "Kuether"), and Abigail K. Sylvia (hereinafter referred to as "Sylvia") ("the Board of Regents," "the University," "Chancellor Leavitt," "Kuether," and "Sylvia" are hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

## PARTIES

1.      Plaintiff, John Doe, is an adult natural person and resident of the City of Oshkosh, Winnebago County, Wisconsin.

2.      Defendant, Board of Regents of the University of Wisconsin System consists of 18 members who are responsible for establishing policies and rules that govern the campuses and institutions of University of Wisconsin System, which is an administrative agency of the state of Wisconsin that was created pursuant to Wis. Stat. Ch. 36. The Board is headquartered at 1860 Van Hise Hall, 1220 Linden Drive in Madison, Wisconsin. Andrew S. Peterson is the Regent President.

3.      Defendant, University of Wisconsin-Oshkosh (the "University"), is an institution of higher learning that acts under the authority of the Board and is one of several campuses within the University of Wisconsin System. The headquarters of the University is located at 800 Algoma Boulevard in Oshkosh, Wisconsin.

4.      Defendant, Andrew Leavitt, is an adult natural person who, upon information and belief, resides at 1337 Washington Avenue in Oshkosh, Winnebago County, Wisconsin. Andrew Leavitt is the chief executive officer of the University, otherwise referred to as the Chancellor, and was and currently remains responsible for implementing the policies and procedures pursuant to which the investigation against Plaintiff was to be carried out. Plaintiff sues Chancellor Leavitt in his individual and official capacities.

5.      The University, lead by Chancellor Leavitt, is comprised of various divisions. One such division is the Division of Student Affairs. The Division of Student Affairs is led by Art

Munin, Ph.D. who supervises all departments therein, including, without limitation, the Department of Residence Life and the Dean of Student's office. The Department of Residence Life is managed and supervised by Sylvia and Robert Babcock who report to Dr. Munin. The Dean of Students was managed and supervised by John Palmer and Joann ("Buzz") Bares at all times material herein. Mr. Palmer and Mrs. Bares were agents and employees of the Defendants Board of Regents and University and were under the supervision of Chancellor Leavitt.

6.      Defendant, Shawna M. Kuether, is an adult natural person who, upon information and belief, resides at N1126 Glennview Drive in Greenville, Outagamie County, Wisconsin. Defendant Kuether, who is under the supervision of Chancellor Leavitt, has been the Title IX Coordinator of the University at all relevant times herein, and was and currently remains responsible for implementing the policies and procedures pursuant to which the investigation against Plaintiff was to be carried out. Plaintiff sues Defendant Kuether in her individual and official capacities.

7.      Defendant, Abigail K. Sylvia, is an adult natural person who, upon information and belief, resides at 2822 Pine Ridge Road in Oshkosh, Winnebago County, Wisconsin. Defendant Sylvia, who is under the supervision of Chancellor Leavitt, had been unilaterally chosen by Mr. Palmer or Mrs. Bares to serve as the hearing examiner in a student non-academic misconduct matter involving Plaintiff and a confidential complainant, and was and currently remains responsible for implementing the policies and procedures pursuant to which the hearing involving Plaintiff and the confidential complainant was to be carried out. Plaintiff sues Defendant Sylvia in her individual and official capacities.

## JURISDICTION

8.      This Court has personal jurisdiction over the Defendants because they are (a) domiciled within the state of Wisconsin and Winnebago County; (b) residents of Winnebago

Case 2:19-cv-01348-PP   Filed 09/16/19   Page 5 of 66   Document EXHIBIT A - 005

County; and/or (c) engaged in substantial and not isolated activities within the state of Wisconsin and Winnebago County.

9.     This Court has subject matter jurisdiction over the claims because (a) the third cause of action asserts a state law claim based on Wis. Stat. § 806.04 and (b) established Wisconsin law permits Section 1983 claims to be brought in either state or federal court, pursuant to Terry v. Kolski, 78 Wis. 2d 475, 254 N.W.2d 704 (1977) and Riedy v. Sperry, 83 Wis. 2d 158, 265 N.W.2d 475 (1978).

10.     There is no requirement for an aggrieved party like Plaintiff to file a notice of claim against any of the Defendants, pursuant to Wis. Stat. § 893.80, as a prerequisite to commencing an action such as this one, pursuant to Felder v. Casey, 487 U.S. 131 (1988).

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11.     Plaintiff realleges and incorporates each of the foregoing paragraphs as if fully set forth herein.

12.     Plaintiff is a male who applied to and was accepted as a student at the University. He is an enrolled student at the University, actively registered for and participating in his coursework at the University. He signed one or more agreements upon acceptance and in each year of enrollment that gives him the right and authority to continue to pursue his academic career.

13.     Plaintiff is a member of a Greek fraternity at the University. The confidential complainant is a member of Zeta Tau Alpha, a Greek sorority at the University.

14.     On March 16, 2019, the Zeta Tau Alpha sponsored an off-campus social function at the Westward Ho in Winnebago County. The confidential complainant invited Plaintiff to attend this off-campus social function, and they attended together, with many other male and female students of the University

15.     At the end of the off-campus social function that evening the confidential complainant and Plaintiff boarded a bus, with others, and sat next to each other. She sat on

Plaintiff's right. They were flirtatious with each other. She leaned towards Plaintiff. She then brushed her body against his. She reached out to touch his leg and began stroking it. They kissed and made out with each other. This consensual and permitted conduct of a sexual nature occurred most of the time while on the bus.

        16.     Upon arriving at their destination, the confidential complainant invited Plaintiff back to her residence. Plaintiff accepted the invitation. They walked from the drop off location to her home without any difficulty, including stepping down and up from curbs. She climbed many steps to her home without any difficulty. She entered a security code to gain access to her house without any difficulty. She opened the door and entered her house without any difficulty.

        17.     The confidential complainant and Plaintiff sat on the couch in the living room, Plaintiff on the left and she on the right, for approximately five (5) minutes. The confidential complainant then leaned close to Plaintiff and invited him to her bedroom; the invitation was accepted. They traversed the staircases without difficulty. She opened the door to her bedroom without any difficulty and they entered. Plaintiff and the confidential complainant had consensual sexual contact and intercourse. The confidential complainant permitted Plaintiff to stay the night in her bed. Plaintiff awoke early the next morning. The confidential complainant walked Plaintiff to the door and he exited the residence. They had no significant contact thereafter.

        18.     Nothing ever was made of that evening for the remaining 14 days of March 2019, or the 30 days in April of 2019, or the first 12 days of May 2019.

        19.     On Monday, May 13, 2019, the confidential complainant purportedly spoke with Joann ("Buzz") Bares, the then Interim Dean of Students, and first reported that the sexual interactions on the evening of March 16, 2019, were not consensual. The confidential complainant did not file an Official Incident Report; rather, Mrs. Bares did for her through the University's Title

07505508.WPD.1                 Page 5 of 33

IX official reporting site at 5:40 p.m. that day.  It is presently unknown why the confidential

complainant could not or would not file the complaint on her own.

      20.     On Monday, May 13, 2019, a letter was authored to Plaintiff putting him on

notice of the commencement of an investigation into the allegations asserted by the confidential

complainant.  Mrs. Bares ordered Plaintiff to attend a meeting to discuss the incident two (2) days

later on Wednesday, May 15, 2019.  Plaintiff and his legal counsel appeared as ordered and

submitted a detailed written statement to respond to the allegations of the confidential complainant.

The written statement was accepted by Mrs. Bares.  Mrs. Bares invited the subsequent presentation

of information relevant to the matter at hand.

      21.     On May 29, 30, and 31 of 2019, Plaintiff presented Mrs. Bares with

information gathered from three individuals during the course of an investigation.  The

informational statements, without personally identifiable information, are attached hereto as **Exhibit**

**A, Exhibit B,** and **Exhibit C** and are incorporated herein.  For almost three (3) weeks after July 8,

2019, Mrs. Bares was silent with Plaintiff.

      22.     On June 9, 2019, Mrs. Bares sent an electronic mail message to Plaintiff,

reporting on efforts to communicate with Plaintiff's witnesses and advising that she was able to

conclude her last meeting with the confidential complainant's witnesses.  Mrs. Bares also advised

that she would not be able to conclude the investigation before she left for vacation on June 24,

2019, but would soon after she returned on July 8, 2019.

      23.     On Thursday, July 25, 2019, Mrs. Bares sent another electronic mail message

to Plaintiff, asking for his availability to review an investigative report.  The first date she offered

was Wednesday, July 31, 2019, and the last date was Wednesday, August 6, 2019.  Given calendaring

issues, the meeting was scheduled for Wednesday, August 6, 2019.

      24.     Around this time, and unbeknownst to Plaintiff, Mrs. Bares, or another

University official associated with the investigation, unilaterally selected Professor Brandt Kedrowski

to serve as the hearing examiner. This selection process was done outside the knowledge and involvement of Plaintiff and was not otherwise transparent.

25.    The selection process involving Professor Kedrowski contravened Wis. Admin. Code § UWS 17.06 (2), which provides, "A hearing examiner shall be selected by the chief administrative officer from the faculty and staff of the institution. . . ." The chief administrative officer is the Chancellor. Wis. Admin. Code § UWS 17.02 (1). Upon information and belief, the Chancellor did not select Professor Kedrowski to serve as the hearing examiner relative to the matter involving Plaintiff.

26.    On August 21, 2019, Mr. Palmer, as the Associate Dean of Students, sent an electronic mail message and a hearing script template to Plaintiff and the University's legal counsel, but intentionally choose not to share such message and script template with Plaintiff's legal counsel, even though Mr. Palmer was fully aware Plaintiff was represented by legal counsel who had been actively involved in the matter from the start.

27.    Attached hereto as **Exhibit D** and incorporated herein is a true and correct copy of the electronic mail message and hearing script, with personally identifiable information redacted.

28.    In that electronic mail message Mr. Palmer informed Plaintiff that Mr. Palmer unilaterally scheduled a hearing on the complaint for August 28, 2019, without consulting with Plaintiff or his legal counsel, even though Mr. Palmer, upon information and belief, consulted with the confidential complainant, about her availability, and with all others about their availability.

29.    Despite being part of the University prosecution, on behalf of the confidential complainant, Mr. Palmer also took it upon himself to dictate the mandatory hearing procedures to be followed at hearing. In his hearing script, Mr. Palmer informed Plaintiff that:

A.    "Under UWS 17.12(4)(f), I may make a finding of nonacademic misconduct based on a preponderance of the credible information,

07505508.WPD.1                Page 7 of 33

except in cases of suspension or expulsion, in which the information must be clear and convincing."

B.    "If you have someone represent you, that person can advise you during the proceedings, but cannot speak for you."

C.    "Mr. Golden, will you have a person advising you at this hearing?

Response of Student:

(If yes, what is the name of the person accompanying you?

Please be aware that this person may be here in an advisory capacity only, and you will need to speak for yourself.)"

30.    One of the problems is that Mr. Palmer intentionally misled Plaintiff by offering the dictated procedures because they were inconsistent with established Wisconsin law. Wis. Admin. Code § UWS 17.12 (4)(f)3. (In the type of proceeding at issue, the relevant burden of proof is preponderance of the evidence, not clear and convincing evidence); Wis. Admin. Code § UWS 17.12 (4)(b). (Based on the heightened type of sanction being proposed, Plaintiff's representative has the right to question witnesses, present information and witnesses, and speak on behalf of Plaintiff.)

31.    On Wednesday, August 21, 2019, at 11:46 a.m., Plaintiff's legal counsel sent an electronic mail message to the hearing examiner, Dr. Brent Kedrowski, in which it was requested that the hearing be rescheduled to a mutually convenient time.

32.    On Thursday, August 22, 2019, at 10:47 a.m., Mr. Palmer notified Plaintiff that the August 28 hearing would be rescheduled. Again, Mr. Palmer intentionally chose not to include Plaintiff's legal counsel as a recipient of that communication, but included all others, as a means of attempting to diminish Plaintiff's rights and create an unfair process for him.

07505508.WPD.1                    Page 8 of 33

33.     Attached hereto as **Exhibit E** and incorporated herein is a true and correct copy of the electronic mail message referenced in the preceding paragraph, with personally identifiable information redacted.

34.     On Friday, August 23, 2019, at 8:21 a.m. numerous due process issues had arose during the processing of the matter up to that point that seriously alarmed Plaintiff.  In a good faith attempt to remedy the issues, Plaintiff decided to bring the due process issues directly to Dr. Kedrowski for his considerations and resolution.  Specifically, Plaintiff identified the following due process issues for Dr. Kedrowski:

A.     According to Wis. Admin. Code § UWS 17.11 (2),

When the investigating officer concludes that proceedings under this section are warranted, the investigating officer shall promptly contact the respondent in person, by telephone, or by electronic mail to offer to discuss the matter, review the investigating officer's basis for believing that the respondent engaged in nonacademic misconduct, and to afford the respondent an opportunity to respond.

On May 13, 2019, the University sent an email to Plaintiff, inviting him to a meeting two (2) calendar days later on May 15, 2019, which he did attend, along with the undersigned.  At that meeting the Investigating Officer, Mrs. Bares, did provide a copy of a "Official Incident Report" filed on behalf of the confidential comlainant.  However, Mrs. Bares did not "review [her] basis for believing that Plaintiff engaged in nonacademic misconduct," as required by Wis. Admin. Code § UWS 17.11 (2).  Not only did Mrs. Bares fail to satisfy her obligations under Wis. Admin. Code § UWS 17.11 (2), Plaintiff's due process rights were also violated too.  He was not afforded the full benefits of Wis. Admin. Code § UWS 17.11 (2).

B.     On July 31, 2019, Plaintiff requested to review the investigative file.  That request was based on 34 C.F.R. § 668.46(k)(3)(i)(B)(3), which provides in relevant part:

A prompt, fair, and impartial proceeding includes a proceeding that is -

.     .     .

(B)     Conducted in a manner that -

.     .     .

> (3)  **Provides timely and equal access
> to the accuser, the accused,** and
> appropriate officials **to any
> information that will be used
> during informal and formal
> disciplinary meetings and
> hearings**

Id. (emphasis added.)

The University denied the request.  On July 31, 2019, Plaintiff renewed his request to access and review the file.  At no time before meeting on August 6, 2019, did Defendants permit Plaintiff timely access to any information that was used or presented during the meeting.

C.   According to Wis. Admin. Code § UWS 17.11 (4)(b), the Investigative Report "shall be delivered simultaneously to [Plaintiff] and [confidential complainant]. . . ."  The word "simultaneously" is commonly defined as "existing, occurring, or operating at the same time; concurrent." https://www.dictionary.com/browse/simultaneously  On August 3, 2019, the University personally delivered an "Investigative Report" to Plaintiff in the Dean of Student's office.  The confidential complainant was not present in the room with Plaintiff when the Investigative Report was given to Plaintiff.  The confidential complainant was not observed to be anywhere in the Dean of Student's office from when Plaintiff arrived to when he left.  It has not yet been established or proven by the University that the Investigative Report was delivered simultaneously to Plaintiff and to the confidential complainant .

D.   The University claims in its Investigative Report that Plaintiff engaged in sexual assault of the Complainant, and generally cited to Wis. Stat. § 940.225; however, that statute contains 4 different degrees of sexual assault, and 16 different ways someone could violate the statute.  Insufficient notice was provided that transcended the principles of due process.  Plaintiff requested the University to identify which specific parts of Wis. Stat. § 940.225 it believes he violated.  The University gave a somewhat vague response, and has now been ordered to identify what specific part of Wis. Stat. § 940.225 it is alleging was violated.

E.   The University did not include in its Investigative Report a "description of all information available to the University regarding the alleged incident," as required by Wis. Admin. Code § UWS 17.11 (4)(a).  Specifically, as part of its investigation, the University had the following information available regarding the alleged incident, but intentionally chose not to include that information as part of its Investigative Report:

- •    Information from Witness A (**Exhibit A**);
- •    Information from Witness B (**Exhibit B**); and

• Information from Witness C (**Exhibit C**).

Plaintiff requested the University to amend its Investigatory Report to include the information presented in Exhibits A through C, but it refused to do so.

G.    According to Wis. Admin. Code § UWS 17.11 (4)(c)2., " the investigating officer shall forward a copy of the [Investigative Report] . . . to the student affairs officer.[1]" The University failed to notify Plaintiff when Mrs. Bares forwarded a copy of the Investigative Report to the Dean of Students. Fair play and fundamental fairness dictated that such notice should have been given to Plaintiff, if at the very least to maintain a transparent process.

H.    Plaintiff requested a hearing before a committee rather than a single hearing examiner. Plaintiff understands the letter of Wis. Admin. Code § UWS 17.12 (1) where he would get to decide if a committee or examiner would be the decision maker in all cases except sexual assault, dating violence, domestic violence, stalking, or sexual harassment, and the University decides in cases involving those exceptions. However, Wis. Admin. Code § UWS 17.12 (1) violates procedural and substantive due process to the detriment of and harm to the Plaintiff. The exceptions involve matters of more seriousness and import than those matters where the accused is able to chose the decision maker. One would tend to think, based on logic and common sense, that an accused should have more right to chose the makeup of the decision maker — examiner or committee — in matters of more seriousness and import, not the other way around. Thus, if due process matters at all, Plaintiff should have been given the opportunity to decide if the matter is heard by committee or by hearing examiner, much like participants in both the civil and criminal justice systems are able to choose between a bench trial before a judge or a jury trial of his or her peers.

I.    The University did not engage in a transparent process in its selection of the hearing examiner. The University kept Plaintiff in the dark about such relevant things as, for example, when the process began, who engaged in the process, what contacts were made with the chosen hearing examiner and perhaps others, what discussions took place with the chosen hearing examiner, and what information was conveyed to the hearing examiner without notice to the Plaintiff. Plaintiff was divested of all opportunity to participate in the selection process that resulted in the appointment of Dr. Kedrowksi. Likewise, Plaintiff was divested of all opportunity to participate in the selection process that resulted in the appointment of Sylvia. Chancellor Leavitt was duty bound to

---

[1]    "'Student affairs officer' means the dean of students or student affairs officer designated by the chief administrative officer to coordinate disciplinary hearings and carry out duties described in this chapter." Wis. Admin. Code § 17.11 (4)(c)2.

Case 2:19-cv-01348-PP   Filed 09/16/19   Page 13 of 66   Document   EXHIBIT A - 013

select the hearing examiner, but did not. This contravened the due process rights of Plaintiff and, unfortunately, did not create a transparent process.

J.    According to Wis. Admin. Code § UWS 17.12 (2),

> "the [Dean of Students] shall take the necessary steps to convene the hearing and shall schedule it within 15 days of receipt of the request or written report. The hearing shall be conducted within 45 days of receipt of the request or written report, unless a different time period is mutually agreed upon by the respondent and investigating officer, or is ordered or permitted by the hearing examiner or committee."

Because the request for hearing was served on August 7, 2019, the period "15 days of receipt of the request" for hearing would expire on August 22, 2019, and the period "45 days of receipt of the request" for hearing would expire on September 21, 2019.

Plaintiff has been represented by legal counsel since the very beginning. The University had actual knowledge of such legal representation since the first meeting on May 15, 2019, which legal counsel attended with Plaintiff. Plaintiff's legal counsel accompanied Plaintiff at the meeting with Mrs. Bares and Mr. Palmer on August 6, 2019. At all times between legal counsel had been actively communicating with the University as Plaintiff's representative. Legal counsel filed the request for hearing with the University.

Without prior notice to Plaintiff, the University scheduled the hearing in this matter to take place on August 28, 2019. Plaintiff first received notice on August 21, 2019, for a hearing a week later. Upon information and belief, the University engaged in *ex parte* communications with Dr. Kedrowski about his availability, and consulted with its own legal counsel and legal counsel for the hearing examiner about their availability. Perhaps the University consulted with the confidential complainant about her availability on August 28, 2019. Importantly, however, the University never consulted with Plaintiff and never consulted with his legal counsel about their availability on August 28, 2019, who was unavailable on that date.

K.    On August 21, 2019, the University sent an email to Plaintiff. The email was sent by Mr. Palmer and to Plaintiff, Mrs. Bares, Art Munin, Jennifer Lattis (legal counsel to investigating officer and prosecutor), and Tomas Stafford (assumed legal counsel for hearing examiner). Mr. Palmer did not copy Dr. Kedrowski on the email. Mr. Palmer also intentionally chose not to copy Plaintiff's legal counsel on that email, in an attempted effort to minimize or exclude the undersigned from the process.

In any event, Mr. Palmer dictated various limiting and restrictive hearing procedures without any authority or power to do so. It is a

Case 2:19-cv-01348-PP   Filed 09/16/19   Page 14 of 66   Document 1   EXHIBIT A - 014

hearing examiner or hearing committee who has been lawfully vested with the authority and power relative to hearing procedures. Wis. Admin. Code § UWS 17.12 (4)(c). It is absolutely and fundamentally unfair and unjust to allow one side of the dispute — the University — to establish any hearing procedures without authority and power to do so, much the same as if the other side of the dispute — Plaintiff — was able to dictate any hearing procedures. The issue of hearing procedures is within the province of an examiner or committee, not the University. The University's attempt to establish limiting and restive hearing procedures violates the procedural and substantive due process rights of Plaintiff.

L.   The University's limiting and restrictive hearing procedures were designed and motivated to favor a biased process against Plaintiff and for certain against the search for the truth. Those dictated procedures are at odds with one of the bedrock historical foundations of the University of Wisconsin System:

> Whatever may be the limitations which trammel inquiry elsewhere we believe the great state University of Wisconsin should ever encourage that continual and fearless **sifting and winnowing by which alone the truth can be found.**

Report of the Board of Regents investigating committee, September 18, 1894 (emphasis added.) One cannot have an effective conversation and dialogue with a witness, let alone discover the truth, by crafting written questions and having another ask them before the witness evens speaks a word. The sifting and winnowing process in the search for the truth is not aided by the limiting and restrictive procedures unilaterally dictated by the University.

Even if the University, rather than an examiner or committee, had the unilateral authority to establish hearing procedures, for sake of discussion, the law is clear and does not permit the University's limiting and restrictive hearing procedures. According to Wis. Admin. Code § UWS 17.12 (4)(b),

> The respondent shall have the right to question adverse witnesses, the right to present information and witnesses, the right to be heard on his or her own behalf, and the right to be accompanied by an advisor of the respondent's choice. The advisor may be a lawyer.

Because this matter involves the recommended sanction of suspension, the lawyer "may question adverse witnesses, present information and witnesses, and speak on behalf of the respondent." Wis. Admin. Code § UWS 17.12 (4)(b).

That means what is says — right to question adverse witnesses and the right to present witnesses — not the right to submit questions in advance for another to question the witness. The University does not have the right or the power to abridge the fundamental

constitutional rights memorialized at Wis. Admin. Code § UWS 17.12 (4)(b), especially when the "University of Wisconsin System is committed to respecting students' constitutional rights." Wis. Admin. Code § UWS 17.01.

Cross-examination by orally asking questions is essential because it does more than uncover inconsistencies—it takes aim at credibility like no other procedural device. Without the back-and-forth of adversarial questioning, the accused cannot probe the witness's story to test her memory, intelligence, or potential ulterior motives. Nor can the examiner or committee observe the witness' demeanor under that questioning. Doe v. Baum, 903 F. 3d 575, 582 (6th Cir. 2018)

In Baum, the Court said:

> Thirteen years ago, this court suggested that cross-examination may be required in school disciplinary proceedings where the case hinged on a question of credibility. Flaim v. Med. Coll. of Ohio, 418 F. 3d 629, 641 (6th Cir. 2005). Just last year, we encountered the credibility contest that we contemplated in Flaim and confirmed that when credibility is at issue, the Due Process Clause mandates that a university provide accused students a hearing with the opportunity to conduct cross-examination. Doe v. Univ. of Cincinnati, 872 F. 3d 393, 401-02 (6th Cir. 2017). Today, we reiterate that holding once again: **if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder.**

Id., 903 F.3d 575, 578 (6th Cir. 2018) (emphasis added.) The Court reasoned that

> Due process requires cross-examination in circumstances like these because it is 'the greatest legal engine ever invented' for uncovering the truth. Univ. of Cincinnati, 872 F.3 d at 401-02 (citation omitted). Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted. Id.
>
> Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct. Doe v. Miami Univ., 882 F. 3d 579, 600 (6th Cir. 2018); Univ. of Cincinnati, 872 F.3d at 400; Doe v. Cummins, 662 F. App'x 437, 446 (6th Cir. 2016). Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. Miami Univ., 882 F. 3d at 600. The student may be forced to withdraw from his classes and move out of his university housing. Id. His personal relationships might suffer. See id. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled. Id.

<u>Baum</u>, 903 F. 3d at 581, 583.

> The Plaintiff's position in this regard is not only supported by <u>Baum</u> but is equally supported by the University. The University provided Plaintiff with specific hearing procedures intended to be followed. Based on the University's own document, which it gave to Plaintiff as notice of what he should expect at the hearing, in terms of procedure, Plaintiff, through his legal counsel, should have the right and opportunity to orally ask any relevant questions of all witnesses, including those adverse witnesses presented by the University.

35.    Dr. Kedrowski did not substantively respond to or address the above-referenced due process issues and objections. Rather, on August 23, 2019, at 8:54 a.m., Dr. Kedrowski responded with an electronic mail message containing the following message:

> I am no longer serving as the hearing examiner in this case. Since I know Jared well from serving as his instructor in several courses last year, I thought it would be best to recuse myself from his case. The Dean of Students Office at UW Oshkosh has therefore reassigned the case to another examiner. You can contact Buzz Bares or John Palmer (both of whom are cc'ed on this message) for an update.

36.    By the time that electronic mail message was sent, Defendants had knowledge of Dr. Kedrowski's recusal and had already selected another examiner, but yet intentionally chose to hide and not disclose these material developments from Plaintiff for a significant period of time.

37.    On August 26, 2019, the University prosecutor's attorney, Jennifer Lattis, informed Plaintiff's legal counsel that Sylvia was unilaterally selected by the University to serve as the hearing examiner. This was Plaintiff's first notice of Sylvia's involvement. This selection process was done outside the knowledge and involvement of Plaintiff and was not otherwise transparent to afford a fundamentally fair process.

38.    The selection process involving Sylvia contravened Wis. Admin. Code § UWS 17.06 (2), which provides, "A hearing examiner shall be selected by the chief administrative officer from the faculty and staff of the institution. . . ." The chief administrative officer is the

Chancellor. Wis. Admin. Code § UWS 17.02 (1). Upon information and belief, the Chancellor did not select Sylvia to serve as the hearing examiner.

39.     Sylvia is an employee within the Department of Residence Life who reports to Robert Babcock who in turn reports to Dr. Art Munin, the Associate Vice Chancellor & Dean of Students. The University prosecution, lead by John Palmer, is an Associate Dean of Students who also reports to Dr. Munin. Sylvia, who is expected to serve as a neutral hearing examiner, and the lead prosecutor both ultimately report to the same person — Dr. Munin. If that does not serve as an actual conflict of interest, it certainly presents a serious perceived conflict of interest that could only be addressed by recusal.

40.     There is another layer of a conflict of interest. Attorney Tomas Stafford, who represents Sylvia, is employed by the University of Wisconsin System and practices law out of the Office of General Counsel in Madison. So too does Attorney Jennifer Lattis, who represents the University prosecution. They have offices within 50 or so feet from each other on the 18th floor of Van Hise Hall. The utilize the same computer network on which data files are stored, including relative to this matter. No computerized screening mechanism has been employed on that computer network to ensure that one does not have access to communications and work product of the other. Attorneys in the same law office are not allowed to represent the prosecution and the decision maker in the same case. That would be as if one law firm represents a judge and the district attorney's office in the same case involving the same parties. This conflict of interest is actual and seemingly violates one or more Supreme Court Rules. In the past Defendants have carefully avoided this actual conflict of interest scenario by appointing an attorney from another office, such as from the Office of Legal Affairs at the University of Wisconsin or the University of Wisconsin-Milwaukee, to represent the decision maker or prosecution. That they did not do here.

41.     The initial hearing in this matter was scheduled to begin at 1:00 p.m. on Friday, September 6, 2019. Plaintiff and his legal counsel and witnesses were prepared to appear

and present their case to demonstrate that Plaintiff did not engage in any non-academic misconduct for which he had been charged. Upon information and belief, Mr. Palmer, Mrs. Bares, Attorney Lattis, and/or the University requested that the September 6 hearing be adjourned, for the intended affect of negatively impacting Plaintiff's preparation and defense, and otherwise negatively affected and damaged him. Sylvia capitulated to their requests and, on Wednesday, September 4, 2019, cancelled the September 6 hearing.

42.    On September 10, 2019, Sylvia, in her role as the hearing examiner, issued several decisions and orders.

43.    Attached hereto as **Exhibit F** and incorporated herein is a true and correct copy of her September 10 decisions and orders.

44.    As part of her September 10 decisions and orders, Sylvia, who was charged with the responsibility to serve as a neutral fact finder, disclosed that she had private communications with the confidential complainant without prior notice to or knowledge of Plaintiff or his legal counsel:

>    A.    "Because this is a Title IX case, the complainant has many of the rights provided to the respondent in Chapter UWS 17. **I have consulted with the complainant** and she and/or her representative will not be questioning the respondent in this case."

>    B.    "**After consulting the complainant**, all cross examination of the complainant by the respondent or respondent's representatives will be completed via note cards and read by the hearing examiner. . . ."

Unlike Plaintiff and his legal counsel, Attorney Stafford, who represents Sylvia, and Attorney Lattis, who represents the University prosecution, had prior knowledge of such contacts and communications, upon information and belief.

07505508.WPD.1                    Page 17 of 33

45.     At no time did Sylvia, as the designed neutral decision maker, notify Plaintiff of her intention to communicate and consult with the complainant before it occurred.  At no time did Sylvia, as the designed neutral decision maker, include Plaintiff or his legal counsel in those consultations and communications.  To this day Plaintiff has no idea when the consultation occurred, who was part of the consultation, how long the consultation lasted, and what was discussed.  He has been kept in the dark.  Upon information and belief there was no verbatim recording or transcript of the consultation.  Defendants contributed to an non-transparent process in this regard and deprived Plaintiff of a meaningful opportunity to respond and properly defend himself.

46.     In her role as hearing examiner, presiding over an evidentiary hearing with live testimony, Sylvia was requested by Plaintiff to issue subpoenas to compel witnesses to appear at the hearing.  This request was based on Wis. Stat. § 805.07 (1), which provides that "[s]ubpoenas shall be issued and served in accordance with ch. 885," and on Wis. Stat. § 885.01, which provides in relevant part:

> The subpoena need not be sealed and may be signed and issued as follows:
>
> .     .     .
>
> (4)     **By any** arbitrator, coroner, medical examiner, board, commission, commissioner, **examiner**, committee **or other person authorized to take testimony**, or by any member of a board, commission, authority or committee which is authorized to take testimony, within their jurisdictions, **to require the attendance of witnesses**, and their production of documentary evidence before them, respectively, **in any matter, proceeding or examination authorized by law.** . . .

> Id. (emphasis added)

47.     The request was also based on Racine Unified Sch. Dist. v. Thompson, wherein the scope of Wis. Stat. § 885.01 (4) was examined in the context of a school board who was

authorized to take testimony in connection with a student expulsion case. Id., 107 Wis. 2d 657, 668, 321 N.W.2d 334, 339-40 (Ct. App. 1982).

48.    In Thompson, the school district argued, and the trial court agreed, that a school board did not have the power to issue subpoenas under Wis. Stat. § 885.01 (4).  However, on appeal, the Wisconsin Court of Appeals reversed the trial court's decision and held:

> Finally, . . . we do not concur with the circuit court's founding of its decision upon the lack of a school board's subpoena power.
>
> .    .    .
>
> Section 885.01(4), Stats., provides as follows:
>
>> 885.01 Subpoenas; who may issue. The subpoena need not be sealed, and may be signed and issued as follows :
>>
>> ....
>>
>> (4) By any arbitrator, coroner, medical examiner, *board*, commission, commissioner, examiner, committee or other person *authorized to take testimony*, or by any member of a board, commission, authority or committee which is authorized to take testimony, within their jurisdictions, to require the attendance of witnesses, and their production of documentary evidence before them, respectively, in any matter, proceeding or examination authorized by law; and likewise by the secretary of revenue and by any agent of the department of agriculture, trade and consumer protection.
>
> We are persuaded that sec. 120.13(1)(c), Stats., authorizes a school board to take testimony in the course of an expulsion hearing.  The broad language of sec. 885.01(4), Stats., is clearly satisfied, then, by a school board conducting an expulsion hearing.

Racine Unified Sch. Dist., 107 Wis. 2d at 667-68, 321 N.W.2d at 339-40 (emphasis in original).

49.    Likewise, Sylvia should have recognized and been persuaded that Wis. Admin. Code § UWS 17.12 provided her with sufficient legal authority to take testimony in the course of a student non-academic misconduct proceeding and that the broad language of Wis. Stat. § 885.01 (4) was clearly satisfied by her, as the hearing examiner, presiding over the hearing.

07505508.WPD.1                        Page 19 of 33

50.    Despite the great weight of that authority, Sylvia disregarded it or at the very least misused her discretion by not considering the relevant facts, not properly interpreting and applying controlling law, and not reaching a reasoned determination. Ness v. Digital Dial Communications, Inc., 227 Wis.2d 592, 599-600, 596 N.W.2d 365 (1999). Specifically, Sylvia failed to interpret and apply the plain language of Wis. Stat. § 885.01 (4) and demonstrate why it did not apply. She also failed to explain why Racine Unified Sch. Dist. is not good law or why it does not apply to the facts and circumstances here, whether by direct application or by comparison. Rather, in a conclusory fashion, Sylvia simply stated, in her September 10 decisions and orders, that:

A.    "I have concluded that neither I nor Mr. Culp have authority to issue subpoenas in this student disciplinary case under the state administrative code, state statute, or otherwise."

51.    Sylvia recognized that she "shall admit information that has reasonable value in proving the facts, but may exclude immaterial, irrelevant, or unduly repetitious testimony." Wis. Admin. Code § UWS 17.12 (4)(c)1. Sylvia recognized that the "process need not conform to state or federal rules of criminal or civil procedure, except as expressly provided in ch. UWS 17." Wis. Admin. Code § UWS 17.12 (4)(a). Sylvia went to great lengths to impress upon others that the proceeding before her is an educational and administrative proceeding, and not a court of law.

52.    Nonetheless, when it suited the confidential complainant, Sylvia strictly construed and applied the Wisconsin Rules of Evidence, at Wis,. Stat. § 972.11 (2), as part of her September 10 decisions and orders, disallowing the presentation of evidence about the confidential complainant's sexual history which mirrors acts and conduct in which she engaged with Plaintiff. Yet, when it suited Plaintiff to construe and apply the Wisconsin Rules of Civil Procedure, in regard to subpoena powers, she failed to do so in a manner that benefitted the confidential complainant, to the detriment of Plaintiff.

53.     Another example where Sylvia does not afford Plaintiff the same benefit of her selective enforcement of the law relates to her restrictions and limitations on the ability of Plaintiff to cross examine the confidential complainant by note cards.  Plaintiff shall be allowed to effectively question witnesses:

> The hearing examiner . . .
>
> .       .       .
>
> 3.     "May take reasonable steps to maintain order, and to adopt procedures for the questioning of a witness appropriate to the circumstances of that witness's testimony, **provided, however, whatever procedure is adopted, the complainant and respondent are allowed to effectively question the witness."**

Wis. Admin. Code § UWS 17.12 (4)(c)3. (emphasis added.)

54.     In contravention of Wis. Admin. Code § UWS 17.12 (4)(c)3., Sylvia effectively voided Plaintiff's ability to effectively question the confidential complainant.  In her September 10 decisions and orders, she stated:

> A.     After consulting the complainant, all cross examination of the complainant by the respondent or respondent's representatives will be completed via note cards and read by the hearing examiner, as provided in UWS 17.12(4)(c)(3).

55.     The first problem is that Sylvia engaged in an *ex parte* discussion with the complainant and adopted that procedure at her request.

56.     The second problem is that an attorney cannot effectively question a principal party/witness who is alleging that his client committed the egregious act of sexual assault, by way of note cards.  Note cards may be effective for high school students to give class presentations; however, they are not effective for attorneys to examine and cross examine witnesses, especially when given to another to ask.  Requiring the presentation of questions by note cards to be asked by another removes the give and take of conversations, the immediately follow up of

Case 2:19-cv-01348-PP   Filed 09/16/19   Page 23 of 66   Document 3   EXHIBIT A - 023

questions, the elimination of time for a witness to form and fashion responses to hide the truth, etc. This is especially important because there is limited time afforded to the parties during the hearing.

57.    Sylvia either did not consider, or failed to give reasonable weight, to the fact that this matter involves Plaintiff and the confidential complainant and no other witness to the alleged act of sexual assault. Thus, the hearing examiner's determination will likely turn on the credibility of the confidential complainant, Plaintiff, and witnesses.

58.    "[W]hen the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination. Doe v. Baum, 903 F. 3d 575, 581 (6th Cir. 2018) (citing Doe v. Univ. of Cincinnati, 872 F. 3d 393, 399-402 (6th Cir. 2017) and Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 641 (6th Cir. 2005)).

59.    "Due process requires cross-examination in circumstances like these because it is 'the greatest legal engine ever invented' for uncovering the truth. Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted. So if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process." Doe v. Baum, 903 F. 3d 575, 581 (6th Cir. 2018) (internal citations omitted). Sylvia failed to consider the same or substantially similar information and circumstances.

60.    Sylvia failed to consider the significance of Plaintiff's interests against the minimal burden Defendants would bear by unfettered, professional cross examination of the confidential complainant. "Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct. Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The student may be forced to withdraw from his classes and move out of his university housing. His personal relationships might suffer. And he could face difficulty obtaining educational and

07505508.WPD.1               Page 22 of 33

employment opportunities down the road, especially if he is expelled." <u>Doe v. Baum</u>, 903 F. 3d 575, 582 (6th Cir. 2018) (internal citations omitted.)

61.     Providing Plaintiff with the opportunity for cross-examination of the confidential complainant would have cost Defendants very little.  Upon information and belief, Defendants already provide for hearings with cross-examination in all misconduct cases.  So Defendants already have all the resources they need to facilitate cross-examination and knows how to oversee the process.  <u>Doe v. Baum</u>, 903 F. 3d 575, 582 (6th Cir. 2018) (citing <u>Univ. of Cincinnati</u>, 872 F. 3d at 406 (noting that a university does not bear a significant administrative burden when it already has procedures in place to accommodate cross-examination)).  Importantly, Sylvia nor the other Defendants identified any substantial burden that would be imposed on them if they permitted the opportunity for cross-examination in this context.

62.     Cross-examination is essential in cases like this because it does more than uncover inconsistencies—it "takes aim at credibility like no other procedural device."  Without the back-and-forth of adversarial questioning, the accused cannot probe the witness's story to test her memory, intelligence, or potential ulterior motives.  Plaintiff, his counsel, nor Sylvia, can effectively observe the demeanor of the confidential complainant or effectively question her under a constrained and limited process of questioning through notes cards.  <u>See Brutus Essay XIII</u>, in The Anti-Federalist 180 (Herbert J. Storing ed., 1985) ("It is of great importance in the distribution of justice that witnesses should be examined face to face, that the parties should have the fairest opportunity of cross-examining them in order to bring out the whole truth; there is something in the manner in which a witness delivers his testimony which cannot be committed to paper, and which yet very frequently gives a complexion to his evidence, very different from what it would bear if committed to writing. . . .")

63.    Defendants knowingly and intentionally deprived Plaintiff of his fundamental right to meaningfully participate in the University's Title IX process despite the knowledge that such allegations could lead to life-altering sanctions.

64.    The hearing in this matter is now scheduled to commence on Thursday, September 26, 2019, at 11:30 a.m.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983:  Denial of Fourteenth Amendment Procedural Due Process
#### (Against All Defendants)

65.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

66.    Upon information and belief, Chancellor Leavitt is the University official responsible for hiring and overseeing the work of Kuether as the Title IX Coordinator.

67.    Upon information and belief, Defendant Kuether, as the University's Title IX Coordinator, is responsible for overseeing and implementing the policies and procedures identified in the (a) Regent Policy Document 14-2 Sexual Violence and Sexual Harassment, (b) the University Policy GEN 1.2.(4). Discrimination, Discriminatory Harassment, and Retaliation, (c) the University Policy GEN 1.2.(6). Sexual Harassment Policy, and Wis. Admin. Code Ch. 17:  Student Non-Academic Disciplinary Procedures (hereinafter collectively referred to as the "Policies").

68.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

69.    In this case, the individual Defendants are state actors subject to the Fourteenth Amendment.

70.    Section 1983 of Title 42 of the U.S. Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper
proceeding for redress. . . .

71.     A person has a protected liberty interest in his good name, reputation, honor
and integrity, of which he cannot be deprived without due process.

72.     A person has a protected property interest in pursuing his education, as well
as in future educational and employment opportunities and occupational liberty, of which he cannot
be deprived without due process.

73.     Plaintiff's constitutionally protected property interest in his continued
enrollment at the University was violated by Defendants' actions.

74.     Plaintiff has a constitutional right to be free from arbitrary disciplinary action
that may result in his separation from the University.  This right arises from the policies, courses of
conduct, practices, and understandings established by the University and by the Fourteenth
Amendment.

75.     Plaintiff's constitutionally protected property interest further arises from the
express and implied contractual relationship between the University and Plaintiff.

76.     It is well established that Fourteenth Amendment due process protections
are required in higher education disciplinary proceedings.

77.     A person who has been admitted to a public university has a protected
property interest in continuing his education at that university until he has completed his course of
study.  The state cannot deprive a person of that interest without due process.

78.     As a result, if Plaintiff, as a University student, faced disciplinary action that
included the possibility of suspension or expulsion if found responsible for alleged misconduct, then
the Due Process provisions of the Fourteenth Amendment to the United States Constitution apply
to the disciplinary process carried out by the University.

79.     The University, a state university, is a part of the University of Wisconsin System, with its principal administrative offices in Oshkosh, Wisconsin. The University has a duty to provide its students equal protection and due process of law by and through any and all procedures set forth by the University.

80.     Plaintiff has obeyed all institutional rules and is therefore entitled to a process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he is facing. The allegations in this case could have both an immediate and lasting impact for Plaintiff. He may be forced to withdraw from his classes and move out of his housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road.

81.     Thus, at a bare minimum, Plaintiff was entitled to notice of the charges against him and a meaningful opportunity to be heard.

82.     Indeed, the University Policy 005 GEN 1.2 (5). Sexual Violence Policy guarantees that University offices and individuals receiving a report of sexual assault will "endavor to resolve the matter in a timely manner, with consideration to available information and context."

83.     Nonetheless, since the initiation of the investigation, Defendants have flagrantly violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment through its deprivation of the minimal requirements of procedural fairness.

84.     In doing so, Defendants subjected Plaintiff to an insufficient process.

85.     As a result, Defendants failed to provide Plaintiff with the basic due process protections that they are required to provide students accused of sexual misconduct at a state school.

86.     Defendants, as well as other agents, representatives, and employees of the University, were acting under color of state law when they showed intentional, outrageous, and reckless disregard for Plaintiff's constitutional rights.

07505508.WPD.1                        Page 26 of 33

87.    Defendants all agreed to, approve, and ratify this unconstitutional conduct as described above.

88.    Accordingly, Defendants are liable to Plaintiff in violation of 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment, and for all damages arising therefrom.

89.    As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, emotional distress; loss of educational and non-athletic career opportunities; economic injuries; and other direct and consequential damages. Plaintiff's interests in the results of the disciplinary process are significant.

90.    Defendants' conduct as described herein was malicious, reckless, and/or callously indifferent to Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.  As a result of the foregoing, Plaintiff's damages are an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and non-athletic opportunities, and loss of future career prospects, together with punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements and an injunction staying the remainder of the University disciplinary proceeding.

## SECOND CAUSE OF ACTION
### Violation of Equal Protection Clause of Fourteenth Amendment
#### (Against All Defendants)

91.    Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

92.    The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the
United States; nor shall any State deprive any person of life, liberty,
or property, without due process of law; nor deny to any person
within its jurisdiction the equal protection of the laws.

93.     The allegations hereinabove demonstrate that Defendants violated Plaintiff's

procedural due process rights, in violation of the Fourteenth Amendment and, therefore, 42 U.S.C.

§ 1983.

94.     As a result of the foregoing, Plaintiff is entitled to a judgment against

Defendants, awarding Plaintiff an injunction against further violations of the United States

Constitution in the process of investigating and adjudicating sexual misconduct complaints,

including Plaintiff's, and, against the individual defendants in their personal capacities, damages,

including punitive damages, in an amount to be determined at trial, including, without limitation,

damages to physical well-being, emotional and psychological damages, damages to reputation, past

and future economic losses, loss of educational and athletic opportunities, and loss of future career

prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## THIRD CAUSE OF ACTION
### Request for Declaratory Judgment
(Against All Defendants)

95.     Plaintiff repeats and realleges each and every allegation hereinabove as if fully

set forth herein.

96.     This cause of action seeks a declaratory judgment pursuant to the Uniform

Declaratory Judgments Act, codified at Wis. Stat. § 806.04.

97.     "Courts of record . . . shall have power to declare rights, . . . whether or not

further relief is or could be claimed." Wis. Stat. § 806.04 (1).

98.     "Any person . . . whose rights, status or other legal relations are affected by a

statute . . . may have determined any question of construction or validity arising under the . . . statute

. . . and obtain a declaration of rights, status or other legal relations thereunder." Wis. Stat. § 806.04 (2).

99.     "The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. . . ." Wis. Stat. § 806.04 (1).

100.     "This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Wis. Stat. § 806.04 (12); F. Rosenberg Elevator Co., Inc. v. Goll, 18 Wis.2d 355, 359, 118 N.W.2d 858 (1963).

101.     In student nonacademic misconduct proceedings, involving the potential sanction of suspension or expulsion, it is well established by Wisconsin law that Plaintiff shall have the right to question adverse witnesses, present information and witnesses, be heard on his behalf, and be accompanied by an advisor of choice, which may be a lawyer, in which case the lawyer has the same rights. Wis. Admin. Code § UWS 17.12 (4)(b).

102.     In connection with his legal right to present information and witnesses, Plaintiff requested Sylvia to issue subpoenas to command the appearance of multiple witnesses. This request was premised on Wis. Stat. § 805.07 (1), which provides that "[s]ubpoenas shall be issued and served in accordance with ch. 885." Wisconsin Stat. § 885.01 provides, in relevant part, as follows:

> The subpoena need not be sealed and may be signed and issued as follows:
>
> .          .          .
>
> (4)     **By any** arbitrator, coroner, medical examiner, board, commission, commissioner, **examiner, committee or other person authorized to take testimony,** or by any member of a board, commission, authority or committee which is authorized to take testimony, within their

> jurisdictions, **to require the attendance of
> witnesses,** and their production of documentary
> evidence before them, respectively, **in any
> matter, proceeding or examination authorized
> by law....**

Id. (emphasis added)

103.    Wisconsin Stat. § 885.01 contains broad, unqualified language.  The language
was specifically intended to be broad and to cover all those persons serving in the state roles who
are authorized to take testimony.  There is no limiting language, for example, on boards to school
boards or licensing boards, or on committees or commissions and the others mentioned.  The same
is true for examiners like Sylvia who are hearing examiners authorized to take testimony.  Wis.
Admin. Code § UWS 17.12(4)(c)1.  The broad scope of Wis. Stat. § 805.07 (1) encompasses hearing
examiners to issue subpoenas to compel the attendances of witnesses at hearings over which
examiners preside.

104.    This interpretation has been adopted by the Wisconsin Court of Appeals in
Racine Unified Sch. Dist. v. Thompson, wherein the scope of Wis. Stat. § 885.01 (4) was examined
in the context of a school board who was authorized to take testimony in connection with a student
expulsion case.  Id., 107 Wis. 2d 657, 668, 321 N.W.2d 334, 339-40 (Ct. App. 1982).  In Thompson,
the school district argued, and the trial court agreed, that a school board did not have the power to
issue subpoenas under Wis. Stat. § 885.01 (4).  However, on appeal, the Wisconsin Court of Appeals
reversed the trial court's decision and held:

> Finally, . . . we do not concur with the circuit court's founding of
> its decision upon the lack of a school board's subpoena power.
>
> .        .        .
>
> Section 885.01(4), Stats., provides as follows:
>
> > 885.01 Subpoenas, who may issue. The subpoena need not
> > be sealed, and may be signed and issued as follows :
> >
> > ....

> (4) *By any* arbitrator, coroner, medical examiner, *board*, commission, commissioner, examiner, committee or other person *authorized to take testimony*, or by any member of a board, commission, authority or committee which is authorized to take testimony, within their jurisdictions, to require the attendance of witnesses, and their production of documentary evidence before them, respectively, in any matter, proceeding or examination authorized by law; and likewise by the secretary of revenue and by any agent of the department of agriculture, trade and consumer protection.
>
> We are persuaded that sec. 120.13(1)(c), Stats., authorizes a school board to take testimony in the course of an expulsion hearing. The broad language of sec. 885.01(4), Stats., is clearly satisfied, then, by a school board conducting an expulsion hearing.

Racine Unified Sch. Dist., 107 Wis. 2d at 667-68, 321 N.W.2d at 339-40 (emphasis in original).

105.    Sylvia was presented with all of the above information in connection with Plaintiff's request for her to issue subpoenas to witnesses. Unfortunately, Sylvia denied that request and concluded, contrary to the plain language of Wis. Stat. § 885.01 (4) and Racine Unified Sch. Dist., "that neither I nor Mr. Culp have [sic] authority to issue subpoenas in this student disciplinary case under the state administrative code, state statute, or otherwise." Her decision provided no rational for her reaching that conclusion and, in that regard, was arbitrary and capricious.

106.    Plaintiff seeks a declaratory judgment to the effect that (a) Sylvia (or whoever else succeeds her) has the authority and power to issue subpoenas to compel the attendance of witnesses in this student non-academic disciplinary case and (b) hearing examiners presiding over student non-academic disciplinary cases at the University have the right to issue subpoenas to compel the attendance of witnesses.

107.    Plaintiff seeks an order to enjoin the Defendants, or any of them, to issue subpoenas to compel the attendance of witnesses in this student non-academic disciplinary case sufficiently in advance of any scheduled hearing so that proper service can be accomplished and the subpoenaed witnesses have sufficient notice to appear.

108.    The issue involved in this controversy is ripe for judicial determination.

07505508.WPD.1                        Page 31 of 33

109. Plaintiff has a legally protectible interest in this controversy.

110. A judgment or decree in this cause of action will terminate a controversy and remove an uncertainty involved in the pending student non-academic disciplinary case involving the Plaintiff.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against the Defendants as follows:

111. On the first cause of action for violation of constitutional due process under 42 U.S.C. § 1983, a judgment against the individual defendants awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, punitive damages, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements and, against all Defendants, an injunction enjoining violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints;

112. On the second cause of action for violation of the Equal Protection Cause of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983, a judgment against all Defendants awarding Plaintiff an injunction against violations of the United States Constitution in the process of investigating and adjudicating sexual misconduct complaints and, against the individual Defendants, damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus punitive damages, prejudgment interest, attorneys' fees, expenses, costs and disbursements;

113.    On the third cause of action for declaratory relief,

A.    a judgment declaring that Sylvia (or whoever else succeeds her) has the authority and power to issue subpoenas to compel the attendance of witnesses in this student non-academic disciplinary case and (b) hearing examiners presiding over student non-academic disciplinary cases at the University have the right to issue subpoenas to compel the attendance of witnesses;

B.    An Order directing Defendants, or any one of them, or or whoever else succeeds Sylvia, to issue subpoenas at the request of Plaintiff, the confidential complainant, and/or the University for the purpose of compelling the attendance of witnesses and/or the production of documents;

114.    For an order, directing Defendants to file with the Court and to serve upon Plaintiff's counsel a written report under Oath and within fourteen (14) days of entry of Judgement that sets forth in detail the manner and form in which Defendants have complied with the requirements of the Judgment and Order, including injunctive relief;

115.    For an award of costs, disbursements, and actual attorneys fees; and

116.    Awarding Plaintiff such other and further relief as the Court deems just, equitable and proper.

DEMPSEY EDGARTON, ST. PETER,
PETAK, & ROSENFELDT LAW FIRM
Attorneys for the **Plaintiff**

<u>Electronically signed by Peter J. Culp</u>
Peter J. Culp
Wisconsin Bar No. 1022595

<u>ADDRESS:</u>
210 North Main Street, Suite 100
Oshkosh, Wisconsin  54903-0886

Telephone:     920-235-7300
Facsimile:      920-235-2011
Email:         peterc@dempseylaw.com

Dated:         September 11, 2019

07505508.WPD.1                    Page 33 of 33

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

**Peter J. Culp**

| | |
|---|---|
| **From:** | Peter J. Culp |
| **Sent:** | Wednesday, May 29, 2019 7:03 AM |
| **To:** | Buzz Bares (baresj@uwosh.edu) |
| **Subject:** | ████████ |

Hi Buzz,

We would like for you to include ████████ to the witness list for you to interview.

His contact number is ████████.

He will be able to provide you with the following information:

- He is friends with both ████████ and ████.

- ████ has a good reputation.

- ████ does not have a reputation of being sexually aggressive.

- ████████ is a flirt when she drinks.

- He has had sexual experiences with ████████.

- In one situation, while both were at Molly Maguires, ████████ went to the bathroom and snapchatted ████ that they should leave together. They did and went to his house. They engaged in multiple sexual positions just like she did with ████.

- In another situation, ████ was at his house and snapchatted ████████ to come to his house which she did. While at his house ████████ performed oral sex on him like she did with Jared.

- ████ said he "wouldn't be putting his reputation on the lime if he didn't think ████ was innocent."

I hope this helps.

Peter

Peter J. Culp, Esq.
Partner/Attorney
Dempsey, Edgarton, St. Peter, Petak & Rosenfeldt Law Firm

☎   920.235.7300
🖨   920.235.2011
📧   peterc@dempseylaw.com
Cell:   920.205.0971

| OSHKOSH: | GREEN BAY/DEPERE: | WAUPUN: | FOND DU LAC: | Exhibit |
|---|---|---|---|---|
| 210 North Main Street Suite 100 | | 95 South Harris Avenue P. O. Box 310 | 10 Forest Avenue Suite 200 | **A** |

1

| P. O. Box 886<br>Oshkosh, WI 54903-0886<br>☎ : 920-235-7300<br>📠 : 920-235-2011 | 2079 Lawrence<br>Drive<br>Suite C<br>De Pere, WI 54115<br><br>☎ : 920-235-7300<br>📠 : 920-235-2011 | Waupun, WI 53963-0310<br><br>☎ : 920-324-9736<br>📠 : 920-324-9511 | P. O. Box 1276<br>Fond du Lac WI 54936-1276<br>☎ : 920-922-0470<br>📠 : 920-922-9091 | ☎ : 715-848-2966<br>📠 : 715-842-5189 |
|---|---|---|---|---|

🌱 **Think Green!**  Please consider the environment before printing this e-mail?

This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this message or its attachments is strictly prohibited.

2

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

**Peter J. Culp**

| | |
|---|---|
| **From:** | Peter J. Culp |
| **Sent:** | Thursday, May 30, 2019 7:59 PM |
| **To:** | Buzz Bares (baresj@uwosh.edu) |
| **Subject:** | ████  Matter:  Witness ████████████ |

Hi Buzz,

We would like for you to include ██████████ to the witness list for you to interview.

His email address is ████████████████

████ will be able to provide you with the following information:

- He is in the same fraternity as ████, and a couple of years older than ████.

- He is friends with ████████ and they hang around the same friend group with each other.

- ████ does not have a reputation of being aggressive, either sexually or otherwise.

- He was at two different places on the day in question where ████ was present.

- He has had sexual relations with ██████ on one occasion.

- They had sexual intercourse at his house after both were drinking.

- He said they switched sexual positions multiple times and he knew ██████ was cognizant because they were switching positions and both "doing their thing."

- After their consensual sexual intercourse, ████████ tried to reconnect with him a couple of other times for sex. He said no.  These communications were over snapchat.

I hope this helps.

Peter

Peter J. Culp, Esq.
Partner/Attorney
Dempsey, Edgarton, St. Peter, Petak & Rosenfeldt Law Firm

☎  920.235.7300
📠  920.235.2011
📧  peterc@dempseylaw.com
Cell:   920.205.0971

| OSHKOSH: | GREEN BAY/DEPERE: | WAUPUN: | FOND DU LAC: | Exhibit |
|---|---|---|---|---|
| 210 North Main Street | 2079 Lawrence | 95 South Harris Avenue | 10 Forest Avenue | **B** |
| Suite 100 | Drive | P. O. Box 310 | Suite 200 | |
| P. O. Box 886 | | Waupun, WI  53963-0310 | P. O. Box 1276 | |

1

| Oshkosh, WI 54903-0886 | Suite C | | Fond du Lac WI 54936-1276 | |
|---|---|---|---|---|
| ☎ : 920-235-7300 | De Pere, WI 54115 | ☎ : 920-324-9736 | ☎ : 920-922-0470 | ☎ : 715-848-2966 |
| 🖨 : 920-235-2011 | | 🖨 : 920-324-9511 | 🖨 : 920-922-9091 | 🖨 : 715-842-5189 |
| | ☎ : 920-235-7300 | | | |
| | 🖨 : 920-235-2011 | | | |

🖨 **Think Green!** Please consider the environment before printing this e-mail?

This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this message or its attachments is strictly prohibited.

2

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

**Peter J. Culp**

| | |
|---|---|
| **From:** | Peter J. Culp |
| **Sent:** | Friday, May 31, 2019 3:46 PM |
| **To:** | Buzz Bares (baresj@uwosh.edu) |
| **Subject:** | ███  Matter: Witness ███████ |

Hi Buzz,

We would like for you to include ██████████ to the witness list for you to interview.

Her telephone number is █████████.

██████ will be able to provide you with at least the following information:

- ██████ met █████████ through Greek life at UWO. ██████ is in a sorority that does a lot of events with ██████'s fraternity.

- ██████ and ████ have a close relationship where they can talk to each other about anything. Given their close relationship, ██████ has spent a fair amount of time with ████ in a variety of social settings, from causally hanging out at a house to formals, parties, etc.

- During all the times they have hung out, ██████ has never felt unsafe around ████. She said whether there is alcohol around or not, ████ is not aggressive and doesn't aggressively pursue women.

- ██████ said when ████ drinks he doesn't have a mood change.

- Given ██████'s close relationship with ████ she was able to say that ████ has never been the guy to say disparaging comments about women or comments like "I really want to hook up with that girl." ██████ hasn't seen him pursue a girl when they have been out.

- ██████ said she is confident, given her knowledge of ████ not aggressively pursuing women or not talking about girls with her, that if he actually was pursuing someone and they told him enough or to stop he would stop. In other words, given her experience with ████, her knowledge of ████'s personality, and her knowledge of ████'s personality towards women, she doesn't think ████ assaulted ████.

- ██████ said that ████ and his fraternity have a good reputation on campus and sororities are not afraid to go to socials with them. That is not the case with the other fraternities.

- ██████ was not with ████ the day of the alleged incident as it was another sorority formal and she had to work.

- ██████ knows of █████████ but she doesn't associate with ██████ or her sorority, so she wasn't able to comment on █████████.

I hope this helps.

Peter

Peter J. Culp, Esq.
Partner/Attorney

Exhibit

C

1

Dempsey, Edgarton, St. Peter, Petak & Rosenfeldt Law Firm

☎    920.235.7300
🖨    920.235.2011
📧    [peterc@dempseylaw.com](mailto:peterc@dempseylaw.com)
**Cell:**    920.205.0971

| **OSHKOSH:** | **GREEN BAY/DEPERE:** | **WAUPUN:** | **FOND DU LAC:** | **WAUSAU:** |
|---|---|---|---|---|
| 210 North Main Street | 2079 Lawrence | 95 South Harris Avenue | 10 Forest Avenue | 115 Forest Street |
| Suite 100 | Drive | P. O. Box 310 | Suite 200 | Wausau, WI 54403 |
| P. O. Box 886 | Suite C | Waupun, WI 53963-0310 | P. O. Box 1276 | |
| Oshkosh, WI 54903-0886 | De Pere, WI 54115 | | Fond du Lac WI 54936-1276 | |
| ☎ : 920-235-7300 | | ☎ : 920-324-9736 | ☎ : 920-922-0470 | ☎ : 715-848-2966 |
| 🖨 : 920-235-2011 | | 🖨 : 920-324-9511 | 🖨 : 920-922-9091 | 🖨 : 715-842-5189 |
| | ☎ : 920-235-7300 | | | |
| | 🖨 : 920-235-2011 | | | |

♻ **Think Green!**  Please consider the environment before printing this e-mail?

This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this message or its attachments is strictly prohibited.

2

EXHIBIT A - 041

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

**From:** John Palmer <palmerj@uwosh.edu>
**Sent:** Wednesday, August 21, 2019 9:52 AM
**To:** ███████████████
**Cc:** Buzz Bares <baresj@uwosh.edu>; Art Munin <munina@uwosh.edu>; Jennifer Lattis <jlattis@uwsa.edu>;
Tomas Stafford <tstafford@uwsa.edu>
**Subject:** Hearing Letter

Hello ████ ,

I noticed the Maxient Letter I sent on Friday was not opened. I did send you a hard copy you
should have received in the US Mail by now however. Attached is the email I sent last Friday
below. Please let me know that you have received this.

August 16, 2019
████████████ Sent electronically to ████████████████

PERSONAL AND CONFIDENTIAL
Regarding Case Number: 2018141201

Dear ████████████ ,

This will confirm that a hearing before a misconduct Hearing Examiner has been scheduled for
August 28, 2019 at 9 AM Reeve Union 102 N. The hearing will address the March 16, 2019
Statement of Charges and the recommended sanctions.

Attached you will find an outline of the proceedings. At the hearing, you have the right to
question witnesses, to present evidence and witnesses, to be heard on your own behalf, and
to be represented by an individual of your choice, at your own expense. Please note UWS
17.12 for non-academic misconduct, and UWS 14.08 for academic misconduct for the hearing
procedures.

All parties will submit their questions to the Hearing Examiner, The Hearing Examiner will ask
the questions submitted. Writing materials will be available for questions. In accordance with
Chapter 17 all parties will be expected to answer questions on their own behalf.

Attached is a copy of your disciplinary file. If you have statements or other evidence you plan
to present at the hearing, please provide 3 copies.

Finally, if you plan to present witnesses or to be represented by another individual at these
proceedings, it is your responsibility to inform these individuals of the date, time, and location
of the hearing.

**Exhibit**

**D**

1

I would be happy to meet with you about the process or answer any questions you may have about the hearing. If you have any questions, please contact me at 424-3100.

Sincerely,
John Palmer Associate Dean of Students

CC:
 Associate Vice Chancellor/Dean of Students - Art Munin
Associate Dean of Students - Buzz Bares Senior
System Legal Counsel - Tomas L. Stafford
Senior System Legal Counsel - Jennifer Lattis

John M. Palmer
Associate Dean of Students
UW Oshkosh
125 Dempsey
(920) 424-3100

2

## NONACADEMIC MISCONDUCT HEARING:
### HEARING EXAMINER

Date: July 28, 2019

Place: 102N Reeve_____

Hearing Examiner: __Brandt Kedrowski_____

Presenting case for University:__John Palmer_____

Student: __██████████_____

## Call to Order and Introductions

I call this meeting to order at __(time)__ on ___July 28, 2019_____. Would everyone please either silence your cell phones or put them on vibrate so we don't have interruptions? Thank you.

My name is Brandt Kedrowski, and I will be serving as the Hearing Examiner. This is a Nonacademic Misconduct Hearing to hear the case of ████████. This hearing is being conducted at Mr. ████████ request to contest the decision and/or sanctions of the Investigating Officer, __Buzz Bares_____.

At this point, I would like to have those who are participating in this hearing to introduce themselves. Please state your name and affiliation with UW Oshkosh.

## Preliminary and Introductory Matters

Appearing here today are Unversity Rep., John Palmer, Student, ████████ and Recorder.

Recorder will be here to make sure the hearing is recorded.

__████████___, while this is a formal procedure, I am not trained in legal matters, and I serve at the request of the University and as required under Ch. UWS17 when a student requests a hearing. This is not a court of law. This is an educational and administrative process. We will proceed in an orderly fashion. I am not bound by common law or statutory rules of evidence and may admit information having reasonable probative value, but shall exclude immaterial, irrelevant, or unduly repetitious testimony. I may also question any witness and examine all information presented. Under UWS 17.12(4)(f), I may make a finding of nonacademic misconduct based on a preponderance of the credible information, except in cases of suspension or expulsion, in which the information must be clear and convincing.

████████, let me explain the process we will be using. After we review the

process, your rights and the charges against you, then both the University representative and you will have the opportunity to state your case in an opening statement, to present witnesses and information, and to make a closing statement. You have the right to be heard on your own behalf, the right to question adverse witnesses, the right to present evidence and witnesses, and the right to be represented by an individual of your choice, at your own expense. If you have someone represent you, that person can advise you during the proceedings, but cannot speak for you. You also have a right to a copy of the record of these proceedings at your own expense. Do you have any questions about the process or your rights?

████████, will you have a person advising you at this hearing?

Response of Student:
(If yes, what is the name of the person accompanying you? Please be aware that this person may be here in an advisory capacity only, and you will need to speak for yourself.)

████████, you also have the right to challenge me if you do not believe I would be appropriate to hear this case. Do you wish to challenge me?

Response of Student:
(If yes, please explain why.)

████████, you have a choice about whether this hearing is open or closed. In an open hearing, others may be present for the proceedings, but are not participants in the proceedings unless they are called as a witness. In a closed hearing, the only individuals who may be present for the proceedings are myself, you and your representative, the University's representative, and the person recording the hearing. Witnesses would be called in one at a time. What is your preference regarding whether the hearing is open or closed?

Response of Student:

Mr. Palmer, does the University have a preference about whether this hearing is open or closed?

Response of University Rep:

**Potential Closed Session** (If the hearing is to be closed. Otherwise, proceed to Preliminary and Introductory Matters cont.)

Under subsections 19.85(1)(a) and (f), Wis. Stats., and under the Family Educational Rights and Privacy Act of 1974, as amended, I declare this hearing and deliberations to be closed.

(If the hearing is closed, everyone with the exception of the hearing examiner, the University Representatives, the student and his/her representative, and the person recording the hearing is excused from the meeting. Witnesses may wait in the lounge area until they are called.)

We will proceed in closed session at __(time)_____.

### Preliminary and Introductory Matters (cont.)

███████, before we begin with the opening statements, would you specify if it is the Investigating Officer's decision of misconduct that you are contesting or the sanctions or both the decision and sanctions?

███████, both the University Representative and you will now have the opportunity to make an opening statement, then to present witnesses and evidence, to speak on your own behalf, and then to make a closing statement.

## Opening Statements

(To University Representative: John Palmer)    Please introduce yourself, describe your position at the University and proceed with your opening statement.

Opening Statement by Mr. Palmer   , University Representative.

███████, Do you have an opening statement that you would like to make?

Opening Statement by ███████.

## Presentation of Witnesses/Evidence and Questions by Hearing Examiner

### *Calling of First Witness

Mr. Palmer, do you have any witnesses or information you would like to present? Witnesses should be presented one at a time. During this time, you, ███████ and I can ask questions of the witness when I recognize you through me as Examiner.

Questions by University Rep.

"I have no further questions."

███████, would you like to ask questions of the witness?

Questions of witness by Student.
Questions by Hearing Examiner.

(Any additional questions by University Rep.?)
(Any additional questions by Student?)
(Any additional questions by Hearing Examiner?)
Any other questions? (none)

This witness is excused.  Is there another person you wish to call as a witness?

*Calling of Second Witness     Questions by University Rep.
Questions by Student.
Questions by Hearing Examiner.
Additional questions by University Rep.
Additional questions by Student.
Additional questions by Hearing Examiner.
Any other questions? (none)

This witness is excused.
Etc.

University Representative:          I have no further witnesses.

## **Statement on own behalf.

_____, I would be happy to hear at this time any information you wish to submit including a statement on your own behalf and the presentation of any witnesses or other information.  Do you wish to start by making a statement on your own behalf or explaining what happened?

Questions by Univ. Rep.
Questions by Hearing Examiner.
Additional statements by Student.
Additional questions by Univ. Rep.
Additional questions by Hearing Examiner.
Any other questions? (none)

## **Calling of First Witness

_____, do you have any witnesses or information you would like to present?  Witnesses should be presented one at a time.  During this time, Student, you, University Rep and I can ask questions of the witness when I recognize you through me as Examiner.

Questions by Student.
Questions by Univ. Rep.
Questions by Hearing Examiner.
Additional questions by Student.
Additional questions by Univ. Rep.
Additional questions by Hearing Examiner.
Any other questions? (none)

This witness is excused.  Is there another person you wish to call as a witness?

## **Calling of Second Witness     Questions by Student.
Questions by Univ. Rep.

Questions by Hearing Examiner.
Additional questions by <u>Student</u>.
Additional questions by Univ. Rep.
Additional questions by Hearing Examiner.
Any other questions? (none)

This witness is excused.
    Etc.

███████, do you have any more witnesses or information you would like to present?

## Closing Statements

As we conclude these proceedings ███████ and <u>Mr. Palmer</u> will have an opportunity to make a summary statement.   <u>Mr. Palmer</u>, we are ready for your closing statement.

Closing Statement by University Representative, <u>  University Rep  </u>.

███████, we are ready to hear your closing statement.

Closing Statement by <u>Student</u>.

Thank you for appearing in this matter.  My decision will be rendered in writing within fourteen calendar days from this day and will be served on ███████ in accordance with Section UWS 17.12(4)(i) of the Wisconsin Administrative Code.  To what address should this be sent?

## <u>Closed Session:  Deliberation on the Case</u> —By the Hearing Examiner.
(Note:  If the hearing was open, the hearing examiner should now close the hearing for the purpose of deliberation.  **If the hearing was previously closed, proceed to adjournment.**)

Under subsections 19.85(1)(a) and (f), Wis. Stats., and under the Family Educational Rights and Privacy Act of 1974, as amended, I now declare this hearing and deliberations to be closed.

## Adjournment

I hereby declare this hearing to be concluded.  You are all dismissed.

**From:** John Palmer <palmerj@uwosh.edu>
**Sent:** Thursday, August 22, 2019 10:47 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Tomas Stafford <tstafford@uwsa.edu>; Jennifer Lattis <jlattis@uwsa.edu>; Buzz Bares <baresj@uwosh.edu>; Art Munin <munina@uwosh.edu>
**Subject:** Title IX Hearing Rescheduling

Dear ▮▮▮▮,

At your request the hearing scheduled for August 28, 2019 will be rescheduled. New rooms will be reserved once a time and date is decided.

I am looking at rescheduling the hearing on the first week of school between Tuesday September 3 through Friday September 6, 2019. Can you let me know what times you are available on Tuesday September 3, Wednesday September 4, Thursday September 5, and Friday September 6. Please list all times you and your attorney can meet each day between 8 AM and 7 PM.

I hope to hear from you by the end of the day on August 26th with your availability, so we can schedule the location and time a week before the hearing.

Thank you,
John


John M. Palmer
Associate Dean of Students
UW Oshkosh
125 Dempsey
(920) 424-3100

Exhibit

E

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

Exhibit

**Peter J. Culp**

| | |
|---|---|
| **From:** | Abby Sylvia <sylvia@uwosh.edu> |
| **Sent:** | Tuesday, September 10, 2019 8:51 AM |
| **To:** | Jennifer Lattis; Peter J. Culp; Tomas Stafford; |
| **Subject:** | Hearing Information |

As we prepare for the upcoming hearing, there are a number of items that need to be addressed.

Based upon all received availability, the hearing will be on **Thursday, September 26, 2019** from **11:30AM-2:30PM**. I am in the process of securing a location and will send that to all parties as soon as that has been confirmed.

All parties have previously received two versions of a script. There are several items related to the script that we need to determine prior to the hearing. Once those items are addressed, I will send out a final version of the script.

This case will be heard by a university hearing examiner as provided in UWS 17.12(1). It will not be heard by a hearing committee. An initial item that needs to be addressed is the challenge by the respondent of me as the hearing examiner. I am one of three trained hearing examiners at UW-Oshkosh appointed by University shared governance. After the hearing examiner initially assigned to this case withdrew, I was asked and agreed to conduct this hearing. I do not know the complainant or respondent and have no bias in this case. Respondent acknowledges that my honesty and integrity is not being questioned. Additionally, my employment in the Department of Residence Life does not create a conflict of interest for or against the complainant or respondent that requires me to withdraw from this case. Accordingly, I will continue to serve as the hearing examiner in this matter.

Because this is a Title IX case, the complainant has many of the rights provided to the respondent in Chapter UWS 17. I have consulted with the complainant and she and/or her representative will not be questioning the respondent in this case.

The question of whether or not the hearing will be open or closed must be determined prior to the hearing, as we will need to provide notice of an open hearing 24 hours prior to the hearing. Both parties need to inform me no later than **12:00PM on Monday, September 16, 2019** if they would like an open or closed hearing. In a closed hearing, the only individuals who may be present for the proceedings are myself, the respondent and his representative, the complainant and her representative, the University's representative, the person recording the hearing, and counsel for the hearing examiner and the University. Witnesses would be called into the meeting room one at a time. If one party would like a closed hearing, the hearing will be closed. I reserve the right to close the hearing even if both parties request an open hearing.

Both parties or their representatives generally may examine their own witnesses and cross-examine the other party's witnesses. After consulting the complainant, all cross examination of the complainant by the respondent or respondent's representatives will be completed via note cards and read by the hearing examiner, as provided in UWS 17.12(4)(c)(3).

I would also like copies of the witness lists prior to the hearing, which will be shared with each parties' representatives. Please share this with me no later than **12:00PM on Monday, September 16**

1

, 2019. It is my understanding that respondent has been provided all documentary and other evidence necessary for this hearing.

I understand that this hearing is to determine if there is a preponderance of evidence to find ███████ in violation of UWS 17.09 (02) Sexual Assault, which is conduct defined in s. 940.225, Stats. Prior to the hearing, I would like further clarification from the University regarding the degree of sexual assault and the specific applicable section(s) under this statute that are being charged against ████████.

After reviewing the statutes and relevant administrative codes sections relating to Mr. Culp's issuance of subpoenas to several witnesses, I have concluded that neither I nor Mr. Culp have authority to issue subpoenas in this student disciplinary case under the state administrative code, state statute, or otherwise. With one exception, I do not have the names of the individuals Mr. Culp subpoenaed. Therefore, I respectfully request that Mr. Culp communicate this information to the individuals who were subpoenaed and carbon copy me and Ms. Lattis on those communications.

Finally, having read the items shared back and forth between Mr. Culp and Ms. Lattis, I did notice information shared by character witnesses regarding their prior sexual contact with the complainant. I want to make it abundantly clear that this hearing is about this specific incident involving the respondent and complainant. While this is an educational and administrative hearing and not a court of law, the law does protect the sexual history of a complainant. Evidence regarding the complainant's prior sexual conduct, other than that permissible under s.972.11(2), will not be admitted into evidence during the course of this hearing.


Sincerely,

Abby

Abby Sylvia
Associate Director of Residence Life
University of Wisconsin Oshkosh
(920) 424-3212
sylvia@uwosh.edu

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757
Honorable Daniel J.
Bissett
Branch 6

STATE OF WISCONSIN          CIRCUIT COURT          WINNEBAGO COUNTY
                               BRANCH _____

JOHN DOE,

                Plaintiff,

-vs-

BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN SYSTEM
Andrew S. Peterson, Regent President
1860 Van Hise Hall
1220 Linden Drive
Madison, WI 53706,

UNIVERSITY OF WISCONSIN OSHKOSH          Case No. 19-CV-_____
800 Algoma Boulevard                     Classification Code No. 30107, 30704
Oshkosh, WI 54901;

ANDREW LEAVITT, in his individual and official
capacities,
800 Algoma Boulevard
Oshkosh, WI 54901;

SHAWNA KUETHER, in her individual and official
capacities,
N1126 Glennview Drive
Greenville, WI 54942-8782; and

ABIGAIL K. SYLVIA, in her individual and official
capacities,
2822 Pine Ridge Road
Oshkosh, WI 54904-8480;

                Defendants.

---

## DECLARATION OF JOHN DOE

---

      I, John Doe, on September 11, 2019, declare the following pursuant to Wis. Stat. § 887.015

(4):

          1.      I am the Plaintiff in the instant action.

07505849.WPD.1

2.     I submit this Declaration in support of the factual allegations as set forth in the accompanying Verified Complaint, the same being true and correct to the best of my knowledge and belief

3.     I also submit this Declaration in support of my Motion to Proceed Under a Pseudonym.

4.     I have personal knowledge of the facts referenced in this declaration.

5.     In this action, I seek relief against Defendants due to their actions, omissions, errors, and failure to appropriately investigate and respond to the allegations of misconduct made by the confidential complainant.

6.     I have so far sustained significant reputational and financial damages as a result of the Defendants' actions, omissions, errors, and failure to appropriately investigate and respond to the allegations of misconduct made by the confidential complainant and such harm, I believe, will continue.

7.     I had, and continue to have, deep and significant concerns about disclosing my identity to the public in order to protect my significant privacy interests, including information of a highly sensitive and personal nature.  The mere allegations that lead to the investigation, despite being baseless, have the potential of carrying negative social stigma such that his identity and privacy interests are substantial.

8.     I realized, and continue to realize, Defendants have a right to know my identity, and to that extent, I have set forth averments in the accompanying Verified Complaint with particularity that will leave no doubt in the mind of Defendants about my true identity.  Thus, Defendants should suffer no prejudice as a result of my continuing to proceed under a pseudonym.

07505849.WPD.1

WHEREFORE, the Court should grant Petitioner's application in its entirety, and should order such further and other relief as the Court deems just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

John Doe

07505849.WPD.1

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **WINNEBAGO COUNTY**

John Doe vs. Board of Regents of the University of
Wisconsin System et al

**Notice of Hearing**

Case No: 2019CV000757

COURT ORIGINAL

This case is scheduled for: **Motion hearing**

| Date | Time | Location |
|---|---|---|
| 09-24-2019 | 11:00 am | Branch 6, 5th Floor, Room 531 |
| **Circuit Court Judge/Circuit Court Commissioner** | | P O Box 2808 |
| Daniel J. Bissett | | 415 Jackson Street |
| | | Oshkosh WI 54903-2808 |
| **Re** | | |
| Other-Injunction/Restrain Order | | |

This matter will not be adjourned by the court except upon formal motion for good cause or with the specific approval of the court upon stipulation by all parties.

RE: PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY STAY ORDER AND INJUNCTION; AND

PLAINTIFF'S MOTION FOR LEAVE FOR PLAINTIFF TO PROCEED ANONYMOUSLY AS JOHN DOE

**If you require reasonable accommodations due to a
disability to participate in the court process, please call
920-236-4848 prior to the scheduled court date. Please
note that the court does not provide transportation.**

Winnebago County Circuit Court
Date: September 11, 2019

| DISTRIBUTION | Address | Service Type |
|---|---|---|
| Court Original | | |
| Peter J. Culp | | Electronic Notice |
| Board of Regents of the University of Wisconsin System | c/o Andrew S. Peterson, Regent President, 1220 Linden Drive, Madison, WI 53706 | Mail Notice |
| University of Wisconsin - Oshkosh | 800 Algoma Boulevard, Oshkosh, WI 54901 | Mail Notice |
| Andrew Leavitt | 800 Algoma Boulevard, Oshkosh, WI 54901 | Mail Notice |
| Shawna Kuether | N1126 Glennview Drive, Greenville, WI 54942 | Mail Notice |
| Abigail K. Sylvia | 2822 Pine Ridge Road, Oshkosh, WI 54904 | Mail Notice |

GF-101(CCAP), 10/2009 Notice of Hearing          This form shall not be modified. It may be supplemented with additional material.

**FILED**
**09-11-2019**
**Clerk of Circuit Court**
**Winnebago County, WI**
2019CV000757

**STATE OF WISCONSIN**        **CIRCUIT COURT**        **WINNEBAGO COUNTY**
                             **BRANCH _____**

---

**JOHN DOE,**

                        Plaintiff,

-vs-

**BOARD OF REGENTS OF THE UNIVERSITY**
**OF WISCONSIN SYSTEM**
Andrew S. Peterson, Regent President
1860 Van Hise Hall
1220 Linden Drive
Madison, WI  53706,

**UNIVERSITY OF WISCONSIN OSHKOSH**        Case No. 19-CV-_____
800 Algoma Boulevard                        Classification Code No. 30107, 30704
Oshkosh, WI  54901;

**ANDREW LEAVITT**, in his individual and official
capacities,
800 Algoma Boulevard
Oshkosh, WI  54901;

**SHAWNA KUETHER**, in her individual and official
capacities,
N1126 Glennview Drive
Greenville, WI  54942-8782; and

**ABIGAIL K. SYLVIA**, in her individual and official
capacities,
2822 Pine Ridge Road
Oshkosh, WI  54904-8480;

                        Defendants.

---

### MOTION FOR LEAVE FOR
### PLAINTIFF TO PROCEED ANONYMOUSLY AS JOHN DOE

---

1.      Movant, John Doe ("Movant"), by his attorney, Peter J. Culp, hereby seeks

authorization to file the Summons and Verified Complaint in the above-captioned matter as a

pseudonymous Plaintiff.  In light of the serious nature of the allegations against Plaintiff, Plaintiff is

justifiably concerned about the possible harm and acts of retaliation that could further prevent

Plaintiff from proceeding with his educational career and future endeavors. Plaintiff's identity, in

addition to the confidential complainant as described in the Verified Complaint, should not be

disclosed to the public due to the sensitive nature of the underlying allegations. Plaintiff is prepared

to provide a statement of his true identity, under seal, upon the Court's request.

2. This lawsuit involves requests for writs and claims for the recovery of general,

special, and punitive damages arising out of the improper investigation and hearing of complaint of

misconduct of a sexual nature.

3. Plaintiff had, and continues to have, deep and significant concerns about disclosing

his identity to the public in order to protect his significant privacy interests, including information of

a highly sensitive and personal nature. The mere allegations that lead to the investigation, despite

being baseless, have the potential of carrying negative social stigma such that his identity and privacy

interests are substantial.

4. In Woznicki v. Erickson, the late Justice William Bablitch correctly pointed out:

> In his classic statement, Justice Brandeis characterized 'the right to
> be let alone . . . ' as the most comprehensive of rights and the right
> most valued by a civilized society. See Olmstead v. United States,
> 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928)
> (Brandeis, J., dissenting). In Wisconsin v. Constantineau, 400 U.S.
> 433, 434, 91 S.Ct. 507, 508, 27 L.Ed.2d 515 (1971), the U.S.
> Supreme Court held that a protectable liberty interest is implicated
> '[w]here a person's good name, reputation, honor, or integrity is at
> stake because of what the government is doing to him. . . .' Id. at
> 437, 91 S.Ct. at 510.

> The dissent expresses well and capably the legal conclusion to
> which it believes the law inexorably draws it. It is a position for
> which a legal argument can be made. But it has one major flaw. It
> is a cold legal analysis which does not touch real life. We are not
> talking here about government contracts, minutes of some town
> board meeting, or the like. We are talking about a private citizen's
> concern that his reputation and privacy will be damaged, perhaps
> irreparably, by the release of his personnel and private telephone
> records.

> The words 'public record' are sterile, faceless, bloodless words, but at times conceal within them the lives of real people, and contain the potential for untold damage to privacy and reputation. Public records in the hands of the district attorney, a secondary rather than a primary custodian of those records, may contain uncorroborated or untrue hearsay, raw personal data, or a myriad of accusations, vendettas, or gossip. Much if not all of this data may serve only to titillate rather than inform.
>
> Once released, this data can be quoted with impunity. **A titillated society quickly moves on to the next headline; the revealed person carries the consequences forever.** Our society consistently expresses great concern for victims of crime. **Is not a private citizen whose reputation is about to be shredded, or whose privacy about to be ripped open to public view, potentially as great a victim?** Are we to say that a district attorney in the process of daily business will never make a mistake in the release of 'public records?' **The damage, once done, cannot be undone. And the damage can be monumental. Shakespeare had it right: "He who steals my purse steals trash; . . . But he that filches from me my good name . . . makes me poor indeed."**

Woznicki, 202 Wis. 2d 178, 199, 549 N.W.2d 699, 708 (1996) (emphasis added).

5.     Plaintiff realized, and continues to realize, Defendants have a right to know his identity, and to that extent, has set forth averments in the accompanying Verified Complaint with particularity that will leave no doubt in the mind of Defendants about the true identity of the Plaintiff . Thus, Defendants should suffer no prejudice as a result of Plaintiff continuing to proceed under a pseudonym.

6.     While there appears to be no statute and no local rule that governs a party who wishes to proceed in a trial court under a pseudonym, other state circuit courts have permitted parties to do so. See, e.g., John Doe vs. Board of Regents of the University of Wisconsin System, et al., Milwaukee County Case No. 2017CV006377.

7.     Additionally, federal law provides substantial guidance. "The Federal Rules of Civil Procedure do not expressly authorize or prohibit the use of fictitious names by plaintiffs." 1 James Wm. Moore, et al., Moore's Manual: Federal Practice and Procedure § 9.12[1][b][ii] (2004)[hereinafter Moore]. Consequently, in special circumstances, federal courts have made

exceptions to the policy favoring disclosure to protect privacy interests, including in matters involving sexual relations.  See id.

8.     "A party seeking to proceed anonymously must request permission from the court." Moore, § 9.12[1][b][ii] (2004).

9.     In Wisconsin, a plaintiff may rebut the presumption of disclosure by demonstrating that the harm of revealing his identity exceeds the likely harm from concealing it.  n Doe v. City of Chicago, 360 F. 3d 667, 669 (7th Cir. 2004).  Exceptions to the general rule of disclosure include the need to protect the privacy of "children, rape victims or other particularly vulnerable parties or witnesses." Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F. 3d 869, 872 (7th Cir. 1997).

10.     Many courts have permitted parties to proceed anonymously when special circumstances arise.  Generally, courts allow the use of pseudonyms "[w]here it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment. . . ." U.S. v. Doe, 665 F. 2d 920, 922 (9th Cir. 1977) (citing U.S. v. Doe, 556 F. 2d 391, 393 (6th Cir. 1977)).

11.     Courts have recognized that one of the most compelling reasons for allowing a plaintiff to proceed pseudonymously is where the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." M.M. v. Zavares, 139 F. 3d 798, 803 (10th Cir. 1998).  This fact is often cited by courts as an overriding concern in the weighing of a Plaintiff's right to privacy and the public's right to know.  See, e.g., Doe v. Bell Atlantic Business Systems, 162 F.R.D. 418, 420 (D. Mass. 1995).

12.     There is a high level of sensitivity and harm that stems from cases involving allegations of a sexual nature.  The yet unproven allegations associated with his identity will likely cause irreparable harm to Plaintiff's reputation and career.  Disclosure of his identity will expose him to the chilling effect that comes from the stigma of the label "sexual assault." As one district court stated,

07505875.WPD.1                         Page 4 of 6

> The Court finds it inevitable that he would be asked to explain
> either situation by future employers or graduate school admissions
> committees, which would require him to reveal that he was found
> guilty of sexual misconduct by DePauw . . . the question will still be
> raised, and any explanation is unlikely to fully erase the stigma
> associated with such a finding.  Money damages would not provide
> an adequate remedy at that point; DePauw's disciplinary
> finding-even if determined to have been arbitrary or made in bad
> faith-would continue to affect him in a very concrete way, likely for
> years to come.

King v. DePauw Univ., 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014).

13.     Similarly, another district court indicated how the social stigma associated with

sexual assault results in harm that cannot be addressed by monetary damages alone:

> Plaintiff has plausibly articulated the longstanding impact that such
> an investigation or disciplinary action could have on Plaintiff's life.
> Plaintiff could suffer 'humiliation, disgrace, mental anguish, severe
> emotional distress, injury to reputation, past and future economic
> loss,' etc.  The social stigma associated with a sexual assault
> conviction is deservedly severe.  But for that reason, if the Court
> finds that SU's investigation and possible disciplinary action would
> be somehow unlawful, money damages alone could not unring that
> bell.

Doe v. Salisbury Univ., 2015 WL 3478134 at *9.

14.     The district court in John Doe v. Middlebury College echoed the same sentiment

when expressing the life-long effects of having the label of sexual assault attributed to John Doe:

> John Doe will experience irreparable harm from the gap in
> his education due to a charge of sexual assault, which will last
> for the remainder of his professional life, and any explanation
> is unlikely to fully erase the stigma.

Id., No. 1:15-CV-192-JGM (D. Vt. Sept. 16, 2015).

15.     DePauw, Salisbury Univ., and Middlebury College constitute relevant case law

authority in support of Plaintiff's argument that he will experience retaliatory harm if he is not

granted the protection of proceeding under a pseudonym.

16.     The interests of Defendants and the public will not be harmed at this early stage of

the case if Plaintiff's name is not revealed.  There may be some public interest in this case, especially

07505875.WPD.1                           Page 5 of 6

among individuals and colleges who are struggling to deal with the same issues raised by the Verified

Complaint. However, that public interest can be completely accommodated by a proceeding in

which the Plaintiff's true name is not disclosed.

17.     It is Plaintiff's position that his privacy interests and overwhelming need to protect

information of utmost intimacy substantially outweighs the customary and

constitutionally-embedded presumption of openness in judicial proceedings such that he should be

permitted to continue to proceed under a pseudonym.

18.     A plaintiff seeking to continue to proceed anonymously must file and serve a motion

pursuant to General L. R. 83.9(c) within twenty (20) days of the service of the Complaint. This

Motion and all other commencing pleadings will be served on Defendants no later than that twenty-

day time period.

19.     For these reasons and such other reasons as may appear just to the Court, Plaintiff

requests that his *Ex Parte* Motion for Leave to File Petition as Pseudonymous Plaintiff be granted.

**DEMPSEY EDGARTON, ST. PETER,
PETAK, & ROSENFELDT LAW FIRM**
Attorneys for the **Plaintiff**

Electronically signed by Peter J. Culp
Peter J. Culp
Wisconsin Bar No. 1022595

**ADDRESS:**
210 North Main Street, Suite 100
Oshkosh, Wisconsin  54903-0886

Telephone:     920-235-7300
Facsimile:     920-235-2011
Email:         peterc@dempseylaw.com

Dated:         September 11, 2019

FILED
09-11-2019
Clerk of Circuit Court
Winnebago County, WI
2019CV000757

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **WINNEBAGO COUNTY**
                                **BRANCH VI**

---

**JOHN DOE,**

                    Plaintiff,

-vs-

**BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN SYSTEM**
Andrew S. Peterson, Regent President
1860 Van Hise Hall
1220 Linden Drive
Madison, WI  53706,

**UNIVERSITY OF WISCONSIN OSHKOSH**          Case No. 19-CV-_____
800 Algoma Boulevard                         Classification Code No. 30107, 30704
Oshkosh, WI  54901;

**ANDREW LEAVITT**, in his individual and official
capacities,
800 Algoma Boulevard
Oshkosh, WI  54901;

**SHAWNA KUETHER**, in her individual and official
capacities,
N1126 Glennview Drive
Greenville, WI  54942-8782; and

**ABIGAIL K. SYLVIA**, in her individual and official
capacities,
2822 Pine Ridge Road
Oshkosh, WI  54904-8480;

                    Defendants.

---

### PLAINTIFF'S NOTICE AND MOTION
### FOR *EX PARTE* TEMPORARY STAY ORDER AND INJUNCTION

---

Movant, John Doe (hereinafter "Doe"), by his attorney, Peter J. Culp, will move the Circuit

Court for Winnebago County, Wisconsin, pursuant to Wis. Stat. § 813.02, for a temporary order and

injunction, staying and enjoining further action or hearing on the student non-academic misconduct

07505890.WPD.1                          Page 1 of 4

proceeding involving Doe, and the processes both invoked and not yet invoked, and permitting Doe to fully continue with his education as no such student non-academic misconduct complaint had been made, until further order of the Court.

This Motion will be heard:

**BEFORE:**  Honorable Daniel J. Bissett

**PLACE:**  Winnebago County Courthouse
415 Jackson Street, Room
Oshkosh, WI 54901

**DATE:**  _____

**TIME:**  _____

The grounds for this Motion, as further set forth in the Verified Complaint, the Declaration of John Doe, and the papers on file with the Court, are as follows:

(1)   Doe is a party to a student non-academic misconduct proceeding at the University;

(2)   The student non-academic misconduct proceeding is presided over by a hearing examiner who is employed by the Division of Student Affairs, the same Division who is prosecuting the student non-academic misconduct proceeding;

(3)   Examiners who are authorized to take testimony have the statutory authority and power to issue subpoenas, just like school boards and other persons and bodies who are authorized to take and receive testimony, pursuant to Wis. Stat. §§ 805.07 (1) and 885.01 (4) and Racine Unified Sch. Dist. v. Thompson, 107 Wis. 2d 657, 668, 321 N.W.2d 334, 339-40 (Ct. App. 1982);

(4)   Doe requested the appointed hearing examiner to issue subpoenas on his behalf to compel the attendance of witnesses at the hearing and she refused and reached a conclusory decision, without any rationale;

(5)   The appointed hearing examiner engaged in *ex parte* discussions with the confidential complainant without notice or involvement of Doe and, based on that conversation, placed material and significant limitations on the ability of Doe to cross examine the confidential complainant.  Such limitations do not permit Doe to effectively examine the witness, as required by Wis. Admin. Code § UWS 17.12 (4)(c)3. ("whatever procedure is adopted, the complainant and respondent are allowed to effectively question the witness")

(6)   The student non-academic misconduct proceeding has been plagued by numerous misrepresentations, errors, lack of communications, and other acts and omissions, which are identified in great detail in the Verified Complaint, that have had and will continue to have a detrimental affect on the rights of Doe unless there is intervention by the Court;

(7)   Because Defendants have now scheduled a hearing in the student non-academic misconduct proceeding on September 26, 2019, a decision on the procedural due process and other issues presented in the Verified Complainant is imminent and necessary in advance of any hearing to ensure a fundamental fair hearing for everyone concerned;

(8)   The student non-academic misconduct proceeding should be stayed pending further decisions and orders of the Court relative to the issues raised in the Verified Complaint; there is nothing unfair or unreasonable to stay the proceeding pending further proceedings on the issues;

(9)   Fundamental due process principals require that the Petitioner be treated as innocent until proven guilty and be allowed to continue through the educational process, and through a fair and balanced student non-academic misconduct proceeding. "Whether someone is a 'victim' is a conclusion to be reached at the end of a fair process, not an assumption to be made at the beginning." Schaumleffel v. Muskingum Univ., No. 2:17-CV-463, 2018 WL 1173043, at *16 (S.D. Ohio Mar. 6, 2018); and

(10)   "If a college student is to be marked for life as a sexual predator, it is reasonable to require that he be provided a fair opportunity to defend himself and an impartial arbiter to make that decision. Put simply, a fair determination of the facts requires a fair process, not tilted to favor a particular outcome, and a fair and neutral fact-finder, not predisposed to reach a particular conclusion." Schaumleffel v. Muskingum Univ., No. 2:17-CV-463, 2018 WL 1173043, at *16 (S.D. Ohio Mar. 6, 2018).

**DEMPSEY EDGARTON, ST. PETER, PETAK, & ROSENFELDT LAW FIRM**
Attorneys for the **Plaintiff**


Electronically signed by Peter J. Culp
Peter J. Culp
Wisconsin Bar No. 1022595


<u>ADDRESS:</u>
210 North Main Street, Suite 100

07505890.WPD.1                    Page 3 of 4

Oshkosh, Wisconsin  54903-0886

Telephone:      920-235-7300
Facsimile:      920-235-2011
Email:          peterc@dempseylaw.com

Dated:          September 11, 2019

**FILED**
09-11-2019
**Clerk of Circuit Court**
**Winnebago County, WI**
**2019CV000757**
**Honorable Daniel J. Bissett**
**Branch 6**

| **STATE OF WISCONSIN** | **CIRCUIT COURT** | **WINNEBAGO** |
|---|---|---|

John Doe vs. Board of Regents of the University of Wisconsin System et al

**Electronic Filing Notice**

Case No. 2019CV000757
Class Code: Other-Injunction/Restrain Order

ABIGAIL K. SYLVIA
2822 PINE RIDGE ROAD
OSHKOSH WI 54904

Case number 2019CV000757 was electronically filed with/converted by the Winnebago County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a $20.00 fee to register as an electronic party.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: a4ffc4**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 920-236-4848.

Winnebago County Circuit Court
Date: September 11, 2019

GF-180(CCAP), 06/2017 Electronic Filing Notice
This form shall not be modified. It may be supplemented with additional material.     § 801.18(5)(d), Wisconsin Statutes