# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

**JOHN DOE**,

        Plaintiff,

     V.                        Case No. 19-cv-01348-PP

**BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM**, **UNIVERSITY OF WISCONSIN OSHKOSH**, **ANDREW LEAVITT**, **SHAWNA KUETHER**, and **ABIGAIL K. SYLVIA**,

        Defendants.

---

## RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiff, John Doe (hereinafter "Doe"), by John Doe's attorney, Peter J. Culp, submits this response Brief in Opposition to Defendants' Motion to Dismiss

## PRELIMINARY STATEMENT

Defendants' motion to dismiss should be denied. Doe has faced an administrative process conducted by the University of Wisconsin-Oshkosh, and participated in by the other Defendants, that has been riddled with conflicting procedures, *ex parte* communications, prohibitions on cross examination, and many other issues, all of which have denied Doe his fundamental constitutional due process rights, and afforded him unequal protect and treatment under the law. The procedural shortfalls and failure to adhere to basic Title IX rights has exposed the University's unfair and unlawful process. Instead of allowing the multitude of injustices to continue, without challenge, Doe was forced to file this action against the Defendants, primarily to seek redress for the harms occasioned upon him

by the Defendants, but also to ensure a fair process for all other students who are subjected to the University's process in the future.

Doe's complaint details the inconsistent and unjust procedures that have surfaced during the University's investigation. The investigation was biased against Doe from the outset. The person who first complained, nominated a Complainant under Wisconsin law, reported the alleged nonconsensual contact to the Interim Dean of Student Joann Bares. Ms. Bares then served as the complainant when she filed the formal complaint on behalf of the Complainant through the University's official reporting site. Ms. Bares then changed hats and served as the investigator of the complaint she herself had filed. Ms. Bares then changed hats yet again and served as a witness in the formal hearing on the complaint she filed and that she investigated. As stated in the Complaint, Ms. Bares concluded her investigation and made the determination that Doe was responsible for the false accusation of sexual contact.

This began the hearing process where Doe was (a) continuously denied due process of law in violation of constitutional due process and 42 U.S.C. § 1983; (b) there was no meaningful access given for Doe to review and comment on the investigator's report; (c) despite Doe making a continued request for the investigation file, there was no providing to Doe the evidence that supposedly supported the false allegations of the Complainant and thus no adequate ability to prepare a defense to those allegations; (d) because **a *witness and reporting party*** was made the investigator in this matter there was no presumption of innocence but rather a presumption that the Complainant's story was true because the investigator was predisposed to her emotions while reporting the sexual contact and her story before the investigation began; (e) the hearing examiner refused to issue subpoenas in order to compel witnesses that supported Doe to testify; and (f) there was a conflict of interest in the decision-making process, namely, having a hearing examiner and lead prosecutor who both report to the same person, thereby eliminating any sense of neutrality.

Defendants ignore the University's institutional shortfalls when addressing Title IX complaints and argue for dismissal by depicting a procedure that Defendants believe is not unconstitutional because its not as bad as other institutions. But the fact remains Defendants provided Doe with a deficient and defective Title IX disciplinary process that did not afford him the necessary due process and equal protections to conform to adequate constitutional protections.

## FACTS ALLEGED IN THE COMPLAINT

Doe submits that Defendants' statement of facts, coupled with the Complaint itself, more than sufficiently lays out the facts of this matter for purposes of deciding Defendants' motion to dismiss.

## STANDARD OF REVIEW

Fed. R. Civ. Proc. 8 sets forth the liberal requirements of notice pleading. To state a claim for relief, the complaint must contain a short and plain statement "of the grounds for the court's jurisdiction, . . . the claim showing that the pleader is entitled to relief, . . . and a demand for the relief sought[.]" Fed. R. Civ. P. 8 (a). The purpose of Fed. R. Civ. P. 8 (a) is simply to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).

Defendants challenge whether Doe satisfied the minimal requirements of Fed. R. Civ. P. 8 (a) by way of their motion to dismiss under Fed. R. Civ. P. 12 (b)(6). A motion to dismiss under Rule 12 (b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12 (b)(6); Gibson v. City of Chicago, 910 F. 2d 1510, 1520 (7th Cir. 1990). In connection with a motion to dismiss, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." Roberts v. City of Chicago, 817 F. 3d 561, 564 (7th Cir. 2016). "Rule 12 (b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). A well-pleaded complaint may proceed

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 3 of 28   Document 31

even if it appears "that a recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

To survive a motion to dismiss under Rule 12 (b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F. 3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F. 3d 400, 404-05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). Plaintiffs "need not 'show' anything to survive a motion under Rule 12(b)(6)—[they] need only allege." Brown v. Budz, 398 F. 3d 904, 914 (7th Cir. 2005). The complaint should be dismissed only if the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations. Christensen v. Cty. of Boone, IL, 483 F. 3d 454, 458 (7th Cir. 2007) (citations omitted).

## ARGUMENT

## I.  The Complaint Properly Alleges Violations of the Fourteenth Amendment.

Defendants argue that Doe failed to state his Fourteenth Amendment claims because Doe did not plead a liberty or protected interest and the investigation and hearing processes did not violate due process protects.  (Dkt. 27, pp. 6-8; 11-16). Doe disagrees, and respectfully submits that the Defendants' motion to dismiss should be denied.

**A.** **The Complaint sufficient alleges protected liberty or property interests to survive the Rule 12 (b)(6) motion.**

Defendants' are incorrect that Doe did not plead that he has a protected liberty or property interest through his continued education at the University. (Dkt. 27, p. 6). Specifically, Doe pled the following:

- … "Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct. Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The student may be forced to withdraw from his classes and move out of his university housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled." (Compl. ¶ 60 quoting Doe v. Baum, 903 F. 3d 575, 582 (6th Cir. 2018) (internal citations omitted.)).

- Defendants knowingly and intentionally deprived Plaintiff of his fundamental right to meaningfully participate in the University's Title IX process despite the knowledge that such allegations could lead to life-altering sanctions. (Compl. ¶ 63).

- A person has a protected liberty interest in his good name, reputation, honor and integrity, of which he cannot be deprived without due process. (Compl. ¶ 71).

- A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process. (Compl. ¶ 72).

- Plaintiff's constitutionally protected property interest in his continued enrollment at the University was violated by Defendants' actions. (Compl. ¶ 73).

- Plaintiff's constitutionally protected property interest further arises from the express and implied contractual relationship between the University and Plaintiff. (Compl. ¶ 75).

- It is well established that Fourteenth Amendment due process protections are required in higher education disciplinary proceedings. (Compl. ¶ 76).

- A person who has been admitted to a public university has a protected property interest in continuing his education at that university until he has

completed his course of study. The state cannot deprive a person of that interest without due process. (Compl. ¶ 77).

- Plaintiff has obeyed all institutional rules and is therefore entitled to a process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he is facing. The allegations in this case could have both an immediate and lasting impact for Plaintiff. He may be forced to withdraw from his classes and move out of his housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road. (Compl. ¶ 80).

Doe's allegations are consistent with precedent and show that he has been deprived of a liberty or property interest. The Fourteenth Amendment's Due Process Clause states that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. It is generally accepted that a student's interest in pursuing a public education falls within the liberty and property protections of the Fourteenth Amendment. Doe v. Cummins, 662 F. App'x 437, 445 (6th Cir. 2016); W. v. Derby Unified Sch. Dist. No. 260, 206 F. 3d 1358, 1364 (10th Cir. 2000) ("No one disputes that a student faced with the possibility of suspension from public school is entitled to due process."); Davis v. Regis Coll., Inc., 830 P. 2d 1098, 1100 (Colo. App. 1991) ("a student's interest in attending a public university is a constitutionally protected property right"). A number of courts have specifically recognized that a public university may not suspend or expel a student for alleged sexual misconduct without due process. Gomes v. Univ. of Maine Sys., 365 F. Supp. 2d 6, 15 (D. Me. 2005); Doe v. Univ. of Cincinnati, 173 F. Supp. 3d 586, 600 (S.D. Ohio 2016). The First Circuit held that there is "not a question" that "a student's interest in pursuing an education is included within the Fourteenth Amendment's protection of liberty and property." Gorman v. Univ. of Rhode Island, 837 F. 2d 7, 12 (1st Cir. 1988) (citing Goss v. Lopez, 419 U.S. 565, 574-75 (1975)). "Hence, a student facing expulsion or suspension from a public educational institution is entitled to the protections of due process." Id.

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 6 of 28   Document 31

The Supreme Court of the United States has also assumed there is a constitutionally protected interest in higher education at a public university. See Bd. Of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 82-85 (1978) (assuming the existence of a liberty or property interest for the purpose of analyzing petitioner's due process claims). Accordingly, Doe's complaint more than satisfies established law in order to survive a Rule 12 (b)(6) motion at this early stage.

### i. Doe has pled a protected liberty interest -- good name and reputation.

Defendants' attempt to argue Doe has failed to plead that he has a valid due process claim based on the denial of a liberty interest. (Dkt. 27, p. 7). Particularly, Defendants state that Doe doesn't meet the stigma plus test to show a deprivation of a liberty interest. (Dkt. 27, pp. 7-8). But Doe does meet the stigma plus tests and, therefore, states a claim upon which relief may be granted.

"The concept of liberty protected by the due process clause has long included occupational liberty--'the liberty to follow a trade, profession, or other calling.'" Wroblewski v. City of Washburn, 965 F. 2d 452, 455 (7th Cir. 1992) (quoting Lawson v. Sheriff of Tippecanoe County, 725 F.2d 1136, 1138 (7th Cir. 1984)). "It is the liberty to pursue *a calling or occupation*, and not the right to a specific job, that is secured by the Fourteenth Amendment." Id. (emphasis in original). A stigma-plus analysis must be conducted to determine whether there was "an injury to reputation *along* with a change in legal status. . . ." Somerset House, Inc. v. Turnock, 900 F. 2d 1012, 1015 (7th Cir. 1990) (emphasis in original).

Here, Doe's complaint satisfies the first step of the stigma-plus test. Namely, Doe has pled damage to his reputation because the University, after a biased investigation, determined Doe was a sex offender. "Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life." Baum, 903 F. 3d at 582. "The student may be forced to withdraw from his classes and move out of his university housing." Id. "His personal relationships might suffer." Id. "And he could face difficulty obtaining educational and employment opportunities down the road, especially if

he is expelled." Id. The Seventh Circuit recognized that a student being "branded" as a sexual offender is a damage to the student's reputation. See Doe v. Purdue Univ., 928 F.3d 652, 661 (7th Cir. 2019) (assumption that Doe in the case suffered an injury from being labeled a sexual offender as the Court concluded Doe satisfied the stigma-plus test.).

Doe also satisfies the second element of the stigma-plus test because his legal status changed by the investigation determining he was a sex offender. As the Seventh Circuit held in Purdue Univ., a determination of a sexual offense changes a student's legal status because he "then went from a full-time student in good standing to one suspended for an academic year." Id., 928 F. 3d at 662. The same is true of Doe in this matter. The University concluded the investigation and made the determination that he was a sexual offender, and proposed sanctions including a suspension from all University of Wisconsin institutions for one year and from UW-Oshkosh for 2 years. (Compl. ¶ 34.) Like in Purdue Univ., this determination immediately changed Doe's standing from a full-time student in good standing to a suspended student. Accordingly, Defendants cannot argue in good faith that Doe's standing has not changed under the stigma-plus test.

Moreover, Doe's new legal status will make it virtually impossible to continue his calling as a student. Specifically, "[t]he concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling." Lawson v. Sheriff of Tippecanoe Cty., Ind., 725 F. 2d 1136, 1138 (7th Cir. 1984). Liberty interests are impinged when someone's "good name, reputation, honor or integrity [are] called into question in a manner that makes it virtually impossible for ... [him] to find new employment in his chosen field."

Defendants cite Purdue Univ. for the additional proposition that because Doe is not in the ROTC program that he cannot satisfy this part of the stigma-plus test. (Dkt 27, pp. 7-8). But Defendants actions will make it virtually impossible for Doe to continue on in his calling. For instance, in Lee TT. v. Dowling, the court found that the petitioners in the case satisfied the stigma-plus test

because they were branded child abusers in the State of New York's Central Register. Id., 664 N.E.2d 1243, 1246, 1250 (N.Y. 1996). Because of their branding, one petitioner satisfied the stigma plus test because "[the Central Register] listing ha[d] severely jeopardized future employment prospects in his chosen field. Not only [was] the information that he [was] the subject of an indicated report available to all child care providers, future employers must consult the list before hiring petitioner and if they choose to hire him they are required by law to state in writing their specific reasons for doing so. . . ." Id. The second petitioners were foster parents that had their foster kids removed from their home and would not be "regarded as suitable adoptive parents in the future" unless an agency attempted to justify it in writing. Id. Given these factors, the court concluded:

> [T]he inclusion of petitioners in the Central Register not only harmed their personal reputations, it affected their present employment and effectively foreclosed them from any future employment in the child care area. It signified not that petitioners had performed poorly in their prior jobs or suffered from personal inadequacies but that they presented a potential danger to children or, worse, that they might be capable of criminal conduct toward them.

Id.

The same is true for Doe here. It is undisputed he has suffered harm to his reputation by the University's determination, after a biased investigation, that Doe is a sexual offender. And while the Court in TT. v. Dowling never recognized that the petitioners would never be a child care provider again, the Court reasoned that their branding as child abusers would make them suffer in their professional lives because their "personal inadequacies" would keep others from hiring them. Doe faces a similar future here. The University has proposed sanctions where he would have to leave the University and apply at a different school for Doe to continue as a student. Those universities' will request Doe's record and will base his admission, not on his performance, but on what the University deemed to be personal inadequacies. Likewise, an employer can reasonably ask for Doe's transcripts, which will show an excellent academic record, but also show that he was labeled by the university as a sex offender. All of these factors will make it difficult for Doe to have educational or employment

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 9 of 28   Document 31

opportunities in the future. Accordingly, Doe satisfies the stigma-plus test and his complaint should not be dismissed.

### ii.    Doe has a protected property interest in his transcripts.

Defendants further argue that Doe has failed to allege a protected property interest. (Dkt. 27, pp. 6-7). As outlined above, Doe has alleged a protected property interested in his continued education and property interest through expressed and implied agreements. (Compl. ¶¶ 75-77). Defendants claim this is not enough. But under Seventh Circuit case law and State law, Doe has a protected property interest in his transcript that the University has tarnished with false allegations.

In a bankruptcy case, the Seventh Circuit issued a ruling that found that a university had violated both the automatic stay and discharge provisions of the United States Bankruptcy Code by refusing to provide a debtor with a certified copy of her academic transcript. In re Kuehn, 563 F. 3d 289, 294 (7th Cir. 2009). While the bankruptcy discussion is irrelevant, what is relevant is the Seventh Circuit's decision that a student has a state-law right to receive a certified copy of their transcript. The Court reasoned that a student's right to certified transcripts is a contract. Id. Specifically, the Court held "[a] right to receive a certified copy of a transcript is essential to a meaningful property right in grades." Id. Further, the Court ruled that students have a protected property right in their transcripts because "[i]ntangible grades are worthless without proof" and universities and employers have common practices to review transcripts to verify claims regarding an applicant or employee's academic record. Id.

The Kuehn case helps prove two things: (1) Doe's argument above regarding the University branding him as a sexual offender will be discoverable by other universities and employer alike is correct and demonstrates a protected liberty interest because the Seventh Circuit has recognized university and employer practices requesting transcripts are common; and (2) the case makes it apparent that Doe has a contractual property right to his certified transcripts. It stands to reason that

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 10 of 28   Document 31

Doe has a property right to ensure his transcript does not include a charge of nonacademic misconduct for sexual assault that the University's failed procedures have branded him with. Accordingly, Defendants' arguments miss the mark. Doe's complaint meets established law and should not be dismissed.

### B. The Complaint sufficiently alleges that Doe was not afforded constitutional due process to survive the Rule 12 (b)(6) motion.

Defendants attempt to argue that Doe's due process claims fail on the merits because he will receive constitutionally adequate process. (Dkt. 27, p. 11). It appears Defendants wish to challenge the merits of whether any aspect of the process complained about violate one or more constitutional principles and rights. We need not and cannot engage in a merit's analysis in response to a motion to dismiss. Rather, we need only review whether the Complaint alleged enough facts to state a claim for relief that is plausible on its face. Doe posits that he did satisfy that standard in showing that insufficient notice and an insufficient opportunity to be heard was afforded him.

### i. The hearing examiner failed to give Doe a meaningful opportunity to be heard because she failed to comply with Wisconsin law and issue subpoenas.

Defendants argue that a failure to issue subpoenas does not constitute a constitutional violation, citing <u>Amundsen v. Chicago Park Dist.</u>, 218 F.3d 712 (7th Cir. 2000). (Dkt. 27, p. 12). However, <u>Amundsen</u> is inapposite. Specifically, unlike here (Compl., ¶ 46), the plaintiff in <u>Amundsen</u> "never requested a subpoena for a witness." <u>Id.</u> at 717. <u>Amundsen</u> stated "the ability to subpoena witnesses is not an absolute right." <u>Id.</u> However, here, the ability to subpoena witnesses was made an absolute right by Wis. Stat. § 885.01 (4). Moreover, the decision in <u>Amundson</u> relied on <u>Richardson v. Perales</u>, 402 U.S. 389, 406, 91 S. Ct. 1420, 1430, 28 L. Ed. 2d 842 (1971), where the right to subpoena was denied "because of the "additional and pragmatic factor" of the sheer "cost of providing live . . . testimony" at administrative hearings." <u>Amundson</u>, 218 F. 3d at 717. Here, the student non-academic misconduct process already affords live testimony at a hearing. Wis. Admin. Code § UWS 17.12.

Therefore, cost is irrelevant to the calculus of decision making. For at least these reasons <u>Amundson</u> does not apply and does not help the Defendants in their quest to avoid responsibility by way of their motion to dismiss.

Doe had the clear and established right to "present information and witnesses" at the hearing. <u>Id.</u> § UWS 17.12 (4)(b). Doe had the right to request Sylvia, as the hearing examiner, to issue subpoenas on his behalf so that he could have a meaningful opportunity to be heard. Wis. Stat. § 885.01 (4):

> The subpoena need not be sealed, and may be signed and issued as follows:
>
> .      .      .
>
> **By any** arbitrator, coroner, medical examiner, board, commission, commissioner, **examiner**, committee **or other person authorized to take testimony**, or by any member of a board, commission, authority or committee which is authorized to take testimony, within their jurisdictions**, to require the attendance of witnesses**, and their production of documentary evidence before them, respectively**, in any matter, proceeding or examination authorized by law**; and likewise by the secretary of revenue and by any agent of the department of agriculture, trade and consumer protection.

<u>Id.</u> (emphasis added).

Doe did request Sylvia to issue multiple subpoenas so he could get all relevant information before Sylvia so she could make a full and informed decision on such an important matter. (Compl. ¶ 46.) Contrary to the authority set forth at Wis. Stat. § 885.01 (4), Sylvia refused that request and refused to issue subpoenas. (Compl. ¶ 50.) Sylvia's reasoning was nothing other than a conclusion, not grounded in any administrative code, statute, or other law. <u>Id.</u>

Had Sylvia engaged in an objective analysis, she, like the court did in <u>Racine Unified Sch. Dist. v. Thompson</u>, would have concluded that hearing examiners, like a school board, have the right to issue subpoenas for the benefit of parties like Doe. <u>Id.</u>, 107 Wis. 2d 657, 668, 321 N.W.2d 334, 339-40 (Ct. App. 1982). Doe then would have the responsibility to serve the witnesses with the

subpoena. Whether Sylvia did or did not have the right to enforce subpoenas is irrelevant and nothing more than a red herring. What is relevant is that Sylvia's refusal to issue subpoenas in this regard negatively impacted Doe's fundamental due process right to be heard.

"This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). "The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." Id. "The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Id. To determine what being "heard" looks like is determined on a case by case basis. Id. at 335; Goss v. Lopez, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L.Ed.2d 725 (1975) (illustrating the Supreme Court has declined to set out a universal rule and instructs lower courts to consider the parties' competing interests.)

Important decisions turn on questions of fact. Due process requires those facts to be brought before the decision maker. A live testimonial process as part of a hearing is already in place, consonant with due process principles. Wis. Admin. Code § UWS 17.12. A subpoena process is already in place to compel witnesses to give live testimony as part of the process. Wis. Stat. § 885.01 (4). Doe's position is not to create such rights as much as he is saying that the Defendants should have followed and implemented existing due process rights embedded in Wis. Admin. Code § UWS 17.12 and Wis. Stat. § 885.01 (4). By failing to implement those existing due process rights, for the benefit of the process and Doe alike, Doe's fundamental due process rights were violated.

ii.   **The lack of an impartial hearing examiner negatively impacted Doe's right to a fair and impartial process consistent with due process principles.**

Defendants recognize Doe's constitutional right to an impartial hearing examiner. (Dkt. 27, p. 15.) Defendants also do not dispute that the hearing examiner and the prosecutor share the same supervisor. (Id.) But Defendants posit that the prosecutor and examiner being supervised by the same person and the fact that the examiner was a defendant in a state then federal lawsuit did not make her impartial. Doe disagrees.

In Hess v. Bd. of Trs. of S. Ill. Univ., the Court recognized that "biased decision-making does violate due process." Id., 839 F. 3d 668, 675 (7th Cir. 2016) (citing Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L.Ed.2d 712 (1975)). Blending the functions of the investigator and the examiner, in itself, "does not necessarily render a process unfair." Id. at 664 (citing Hess v. Bd. of Trs. of S. Ill. Univ., 839 F. 3d 668, 675 (7th Cir. 2016)). To show bias a party "must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable." Hess, 839 F. 3d at 675.

Doe believes he did lay the necessary foundation, particularly at the Rule 12 (b)(6) stage, by alleging the same person supervised the prosecutor and examiner and where Doe sued the examiner and made her a party defendant because of issues arising out of the same matter for which the examiner would render a decision. Both reasons, when taken together, and by applying common sense, leads to the conclusion that any reasonable person in the position of the examiner would be biased. Doe did assert sufficient allegations to demonstrate at the Rule 12 (b)(6) stage that his fundamental due process rights were violated by biased decision making on the part of the examiner. He has pled a plausible due process claim.[1]

---

[1]   To illustrate this position, one need only consider the conclusory decision rendered by the examiner in refusing the issue subpoenas by contorting the language and spirit of Wis. Stat. § 885.01 (4) in reaching a result-oriented decision. (Compl. ¶ 50.)

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 14 of 28   Document 31

### iii. The hearing examiner's *ex parte* communications added to the multiple violations of Doe's fundamental due process rights.

An *ex parte* communication is a communication about a case which an adversary makes to the decisionmaker without notice to an affected party. It offends due process because without notice of it the party cannot respond to it. D'Acquisto v. Washington, 640 F. Supp. 594, 621 (N.D. Ill. 1986).

All allegations in the complaint must be accepted as true; thus, in the Complaint, Doe alleged:

> 44. As part of her September 10 decisions and orders, Sylvia, who was charged with the responsibility to serve as a neutral fact finder, disclosed that she had private communications with the confidential complainant without prior notice to or knowledge of Plaintiff or his legal counsel:
>
> A. "Because this is a Title IX case, the complainant has many of the rights provided to the respondent in Chapter UWS 17. **I have consulted with the complainant** and she and/or her representative will not be questioning the respondent in this case."
>
> B. "**After consulting the complainant**, all cross examination of the complainant by the respondent or respondent's representatives will be completed via note cards and read by the hearing examiner. . . ."
>
> Unlike Plaintiff and his legal counsel, Attorney Stafford, who represents Sylvia, and Attorney Lattis, who represents the University prosecution, had prior knowledge of such contacts and communications, upon information and belief.
>
> 54. In contravention of Wis. Admin. Code§ UWS 17.12 (4)(c)3., Sylvia effectively voided Plaintiff's ability to effectively question the confidential complainant. In her September 10 decisions and orders, she stated:
>
> A. After consulting the complainant, all cross examination of the complainant by the respondent or respondent's representatives will be completed via note cards and read by the hearing examiner, as provided in UWS 17.12(4) (c) (3).
>
> 55. The first problem is that Sylvia engaged in an *ex parte* discussion with the complainant and adopted that procedure at her request.

(Compl. ¶¶ 44, 54, and 55) (emphasis in original).

There is and can be no question that Sylvia, as the hearing examiner, reached out to and had communications with the Complainant without Doe's presence. There is and can be no question that Sylvia spoke with the complaining person about the subject of the case over which she presided

without the presence of Doe and others. Based on that discussion, and without consulting with Doe, Sylvia rendered a decision about an important procedural aspect of this matter --- cross examination. Doe was given no opportunity to participate in that decision and present his position before the decision was made. In D'Acquisto, the district court noted:

> It is true that a person or body charged with making a decision should make an independent decision rather than automatically and uncritically accepting the view of one adversary.

Id., 640 F. Supp. at 622 (citing Service v. Dulles, 354 U.S. 363, 387-388, 77 S. Ct. 1152, 1164-1165, 1 L.Ed.2d 1403 (1957) and Robinson v. Palmer, 631 F. Supp. 52, 55 (D. D.C. 1986)). The hearing examiner did just that --- accepted the view of the Complainant --- after the improper *ex parte* communication.

Doe additionally alleged:

> Without prior notice to Plaintiff, the University scheduled the hearing in this matter to take place on August 28, 2019. Plaintiff first received notice on August 21,2019, for a hearing a week later. Upon information and belief, the University engaged in *ex parte* communications with Dr. Kedrowski about his availability, and consulted with its own legal counsel and legal counsel for the hearing examiner about their availability. Perhaps the University consulted with the confidential complainant about her availability on August 28, 2019. Importantly, however, the University never consulted with Plaintiff and never consulted with his legal counsel about their availability on August 28, 2019, who was unavailable on that date.

(Compl. ¶ 34 J.) What the Defendants did was engage in calculated efforts to exclude Doe's counsel from the process of scheduling and then attempted to unilaterally impose a hearing date without regard to the schedule and calendar of Doe or his counsel. This additional evidence of *ex parte* communications, when coupled with the other *ex parte* communications identified above, was designed and intended to frustrate the process and minimize the opportunity of Doe and his counsel to participate in the process. That is just plain wrong and unfair and no doubt states an additional aspect of a plausible violation of Doe's due process rights.

iv.    **The cross-examination procedure imposed by the hearing examiner violated the fundamental constitutional due process rights of Doe.**

Defendants do not seem to challenge that having the ability to cross examine witnesses is a requirement in order to satisfy fundamental constitutional due process. Doe and Defendants agree that whatever hearing procedure was adopted Doe and the complaining person must be "allowed to effectively question the witness." Wis. Admin. Code § UWS 17.12 (4)(c)3. Restricting Doe to cross examination by note cards passed to the hearing examiner to ask the question did not allow Doe to effectively question the witness.[2] Such a process violated Doe's fundamental constitutional right to due process.

Specifically, an attorney cannot effectively question a principal party/witness who is alleging that his client committed the egregious act of sexual assault, by way of note cards. Note cards may be effective for high school students to give class presentations; however, they are not effective for attorneys to examine and cross examine witnesses, especially when given to another to ask. Requiring the presentation of questions by note cards to be asked by another removes the give and take of conversations, the immediate follow up of questions, the elimination of time for a witness to form and fashion responses to hide the truth, etc. This is especially important because there is limited time afforded to the parties during the hearing.

Sylvia either did not consider, or failed to give reasonable weight, to the fact that this matter involved Doe and the Complainant and no other witness to the alleged act of sexual assault. Thus, the hearing examiner's determination likely turned on the credibility of the Complainant, Doe, and any witnesses.

---

[2]       Such restriction was not imposed on the University prosecution, as he was freely allowed to directly cross examine Doe, orally, without use of note cards passed to the hearing examiner.

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 17 of 28   Document 31

"[W]hen the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination. Baum, 903 F. 3d at 581 (citing Univ. of Cincinnati, 872 F. 3d at 399-402 and Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 641 (6th Cir. 2005)).

"Due process requires cross-examination in circumstances like these because it is 'the greatest legal engine ever invented' for uncovering the truth. Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted. So if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process." Baum, 903 F. 3d at 581 (internal citations omitted). Sylvia failed to consider the same or substantially similar information and circumstances.

Sylvia failed to consider the significance of Doe's interests against the minimal burden Defendants would bear by unfettered, professional cross examination of the confidential complainant. "Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct. Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The student may be forced to withdraw from his classes and move out of his university housing. His personal relationships might suffer. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled." Baum, 903 F. 3d at 582.

Providing Doe with the opportunity for cross-examination of the Complainant would have cost Defendants very little. Defendants already provide for hearings with cross-examination in all misconduct cases. So Defendants already have all the resources they need to facilitate cross-

examination and knows how to oversee the process. <u>Baum</u>, 903 F. 3d at 582 (citing <u>Univ. of Cincinnati</u>, 872 F. 3d at 406 (noting that a university does not bear a significant administrative burden when it already has procedures in place to accommodate cross-examination)). Importantly, neither Sylvia nor the other Defendants identified any substantial burden that would be imposed on them if they permitted the opportunity for cross-examination in this context.

Cross-examination is essential in cases like this because it does more than uncover inconsistencies—it "takes aim at credibility like no other procedural device." Without the back-and-forth of adversarial questioning, the accused cannot probe the witness's story to test her memory, intelligence, or potential ulterior motives. Doe, his counsel, nor Sylvia, can effectively observe the demeanor of the confidential complainant or effectively question her under a constrained and limited process of questioning through notes cards. <u>See</u> <u>Brutus Essay XIII</u>, in The Anti-Federalist 180 (Herbert J. Storing ed., 1985) ("It is of great importance in the distribution of justice that witnesses should be examined face to face, that the parties should have the fairest opportunity of cross-examining them in order to bring out the whole truth; there is something in the manner in which a witness delivers his testimony which cannot be committed to paper, and which yet very frequently gives a complexion to his evidence, very different from what it would bear if committed to writing. . . .")

Under these circumstances, and at this Rule 12 (b)(6) stage, where no discovery has been undertaken, Doe has sufficiently alleged a plausible due process violation in this additional respect to survive the Defendants' motion to dismiss.

> v.    **The preponderance of the evidence standard of proof does not comport with fundamental due process.**

Defendants apply the lower preponderance burden for allegations of sexual misconduct, as the did here, and the higher clear and convincing burden for all non-sexual-related misconduct

allegations under Title IX. This differing burden scheme contravenes a directive from the U.S. Department of Education, Office for Civil Rights ("OCR"), which administers Title IX cases like this one. "The standard of evidence for evaluating a claim of sexual misconduct should be consistent with the standard the school applies in other student misconduct cases." "When a school applies special procedures in sexual misconduct cases, it suggests a discriminatory purpose and should be avoided." Id.

The issue of differing burdens of proof was analyzed in Doe v. Brandeis Univ. wherein the district court held:

> [T]he lowering of the standard appears to have been a deliberate choice by the university to make cases of sexual misconduct easier to prove—and thus more difficult to defend, both for guilty and innocent students alike. It retained the higher standard for virtually all other forms of student misconduct. The lower standard may thus be seen, in context, as part of an effort to tilt the playing field against accused students, which is particularly troublesome in light of the elimination of other basic rights of the accused.

Id., 177 F. Supp. 3d 561, 607 (D. Mass. 2016). Deciding the University proceeding based on the lower burden, in contravention of OCR guidance, and taking into consideration the district court's analysis in Brandeis Univ., does not provide Doe with a fundamentally fair hearing.

Under these circumstances, and at this Rule 12 (b)(6) stage, where no discovery has been undertaken, Doe has sufficiently alleged a plausible due process violation in this additional respect to survive the Defendants' motion to dismiss.

### vi. Doe did not receive and is not receiving constitutionally adequate process.

Defendants compare the process afforded to Doe under the administrative code to what was determined in Marshall v. Indiana University and conclude that Doe is receiving constitutionally adequate process. Id., 170 F. Supp. 3d 1201, 1205 (S.D. Ind. 2016). Marshall involves a different

university system in a different state involving different facts; thus, <u>Marshall</u> should not be the benchmark by which due process rights are judged.

Moreover, it is not just the procedures afforded by the administrative code that are deficient from a due process perspective here, but the problem is compounded by how the Defendants implemented that process relative to Doe. For all of the reasons set forth in the complaint and based on all of the arguments made in this brief, Doe believes this is a case that should be tried on its merits rather than by summary disposition under Rule 12 (b)(6) without any discovery. Fairness and justice warrant granting Doe his day in court and the Defendants be held responsible for their missteps by a jury of peers.

## II. The Defendants violated the Equal Protection Clause because Does was not treated equally and was treated differently before any final determination of liability was rendered.

The Fourteenth Amendment to the United States Constitution is clear:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend XIV, § 1.

In <u>Esmail v. Macrane</u>, 53 F. 3d 176 (7th Cir. 1995), then Chief Judge Posner outlined three types of equal protection cases, two common and one uncommon. The first involves charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment. <u>See</u> <u>City of Cleburne, Tex. v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 440-41, 105 S. Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). The second type of equal protection case involves challenges to law or policies alleged to make irrational class distinctions. The third type of case involves action taken by the state, whether in the form of prosecution or otherwise, that is a spiteful effort to persecute the plaintiff, or to "get" her, for reasons wholly unrelated to any legitimate state objective. <u>Esmail</u>, 53 F. 3d at 180.

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 21 of 28   Document 31

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000).

In the present case, and as stated above, the first equal protection claim arises from the differing standards applied to claim of sexual misconduct and to other non-sexual student misconduct cases. "When a school applies special procedures in sexual misconduct cases, it suggests a discriminatory purpose and should be avoided."[3] In that regard, the district court in Doe v. Brandeis Univ. held:

> [T]he lowering of the standard appears to have been a deliberate choice by the university to make cases of sexual misconduct easier to prove—and thus more difficult to defend, both for guilty and innocent students alike. It retained the higher standard for virtually all other forms of student misconduct. The lower standard may thus be seen, in context, as part of an effort to tilt the playing field against accused students, which is particularly troublesome in light of the elimination of other basic rights of the accused.

Id., 177 F. Supp. 3d 561, 607 (D. Mass. 2016). The different standard does not provide equal protection or treatment under the law.

The second equal protection claim involves restrictions imposed on Doe relative to cross examination of the complaining person where no restriction was imposed on others relative to the cross examination of Doe. Specifically, the University prosecution was given a free pass to cross examine Doe. The University prosecution was not limited to cross examination by note card or through the hearing examiner. However, Doe's counsel was prohibited from cross examining the Complainant in every respect. The only opportunity was by note card passed to the hearing examiner

---

[3] https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term=

to ask the questions.  This differing process did not provide equal protection or treatment under the law.

**III.  The Wisconsin notice of claim statute does not apply because Doe has alleged federal constitutional violations that are exempted from the notice of claim statute.**

Defendants' argument regarding Doe's failure to follow the statutory notice of claim statute found in Wis. Stat. § 893.82 is contrary to established case law.  Specifically, Defendants argue that Doe's declaratory judgement action should be dismissed because Doe did not allege he complied with Wis. Stat. § 893.82.  (Dkt. 27, p. 19.)  The law does not support that argument.  The failure of a complaint to allege notice is not jurisdictional.  Majerus v. Milwaukee County, 39 Wis. 2d 311, 316, 159 N.W.2d 86 (1968).  The Wisconsin Supreme Court has ruled that "[c]ompliance [with the statute] is a condition in fact requisite to liability, but it does not follow that the pleading of compliance is a condition to stating a cause of action."  Id.

Regardless, Doe did not have to give a notice to Defendants under Wis. Stat. § 893.82 because of the nature of the case.  This is a § 1983 case.  According to the Supreme Court in Felder v. Casey, plaintiffs in federal civil rights cases brought in state court pursuant to 42 U.S.C. § 1983 are not required to satisfy the Wisconsin notice of claim statute in order to commence or conclude federal civil rights claims.  Casey, 487 U.S. 131, 153 (1988).  According to Casey:

> A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law.  Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court.

Id.

Moreover, the Wisconsin Supreme Court has ruled that a complaint simply has to "allege that a person acting under the color of state law deprived the plaintiff of a right under federal law or the federal constitution" for the Notice of Claim statute not to apply.  Thorp v. Town of Lebanon, 2000

WI 60, ¶ 20, 235 Wis. 2d 610, 625, 612 N.W.2d 59, 68. Doe has satisfied that requirement. See, e.g., Compl. ¶¶ 86.

Further, Doe's declaratory judgement claim is an additional cause of action that seeks redress for Defendants deprivation of Doe's due process rights by not having a sufficient opportunity to be heard because his request for the issuance of subpoenas to compel witnesses to appear at the hearing was denied. The main purpose of the notice of claim statute, as found at Wis. Stat. § 893.82 (1)(a)-(c), is not implicated by the declaratory judgment statute because no monetary judgment is being sought under the declaratory judgment claim. Doe is not claiming any injury or damage pursuant to Wis. Stat. § 893.82 (2)(c) by way of his declaratory judgment claim; thus, he does not qualify as a claimant under Wis. Stat. § 893.82 (2)(b). Consequently, the notice of claim statute does not appear to apply here.

Defendants also claim there is no justiciable controversy and, thus, a claim for declaratory judgment cannot be asserted Doe disagrees. According to Planned Parenthood of Wisconsin, Inc. v. Schimel,

> A matter is justiciable if the following four factors are satisfied:
>
> (1)     The matter is a controversy in which a claim of right is asserted against one who has an interest in contesting it;
>
> (2)     The controversy is between persons whose interests are adverse;
>
> (3)     The party seeking declaratory relief has a legal interest in the controversy, that is to say a legally protectible interest; and
>
> (4)     The issue involved in the controversy is ripe for judicial determination.

Id., 2016 WI App 19, ¶ 10, 367 Wis. 2d 712, 721, 877 N.W.2d 604, 608 (citing Olson v. Town of Cottage Grove, 2008 WI 51, ¶ 29, 309 Wis.2d 365, 749 N.W.2d 211).

Each of the factors for a justiciable matter are present. Doe is asserting a right --- to compel the issuance of a subpoena --- against the Defendants who have an interest in contesting that right. The interests of Doe and the Defendants are adverse. Doe has a legal interest in the controversy.

And the issue involved is ripe for judicial determination. Accordingly, Doe has the right to assert his declaratory judgment claim for decision.

## IV. There is no requirement that a plaintiff like Doe must exhaust his administrative remedies before commencing a § 1983 case.

Defendants' argument that Doe's complaint must be dismissed because he failed to exhaust administrative remedies (Dkt. No. 27, pp. 9-10) has been rejected by the Wisconsin Supreme Court. A plaintiff need not exhaust his administrative remedies before bringing a § 1983 action in state court. Casteel v. Vaade, 167 Wis. 2d 1, 5, 481 N.W.2d 476, 477 (1992); see also Irby v. Macht, 184 Wis. 2d 831, 837, 522 N.W.2d 9, 11 (1994), overruled on other grounds, Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995)). In the present case, Doe originally filed his § 1983 action in state court. Thereafter the Defendants removed the case to this Court. Because Doe was not obligated to exhaust his administrative remedies before commencing his § 1983 action, Defendants' motion to dismiss should not be granted in this regard.

## V. Defendants' qualified immunity defense is premature and should be addressed by way of a summary judgment motion after sufficient discovery has been allowed and pursued.

Defendants finally assert, as to the § 1983 claims, that the individual Defendants have qualified immunity against Doe's allegations. (Dkt. No. 27, pp. 19-22.) That contention is flawed because, as discussed above, (i) the way the University's procedures were constitutionally deprived and failed to give Plaintiff, at the very least, an opportunity to be heard; and (ii) the due process rights sought by Plaintiff are basic and well-established. The individual Defendants cannot bury their heads in the sand from well-established rights, and then turn around and claim immunity form the harm and injustices.

Even so, the qualified immunity defense should not be decided at this juncture. Qualified immunity is generally addressed at summary judgment rather than on the pleadings. See Alvarado v.

Litscher, 267 F. 3d 648, 651 (7th Cir. 2001) ("[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."); Jacobs v. City of Chicago, 215 F. 3d 758, 765 n.3 (7th Cir. 2000) ("[T]he dismissal of a § 1983 suit under Rule 12 (b)(6) is a delicate matter."). See also Peterson v. Jensen, 371 F. 3d 1199, 1201 (10th Cir. 2004) ("summary judgment provides the typical vehicle for asserting a qualified immunity defense"). Raising a qualified immunity defense via motion to dismiss, "subjects the defendant to a more challenging standard of review than would apply on summary judgment." Id. at 1201. "[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" Behrens v. Pelletier, 516 U.S. 299, 309 (1996) (emphasis in original).

### A. Defendants do not have qualified immunity because their conduct violated clearly established rights.

If the Defendants' qualified immunity defense is adjudicated at the Rule 12 (b)(6) stage, without any discovery, then we must "accept as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." Wilson v. Formigoni, 42 F. 3d 1060, 1064 (7th Cir. 1994); McMath v. City of Gary, Ind., 976 F. 2d 1026, 1031 (7th Cir. 1992).

Determining whether qualified immunity applies to the individual Defendant's actions requires a two-part test:

> (1)     whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and
>
> (2)     whether that constitutional right was clearly established at the time of the alleged violation."

Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001). "The 'dispositive inquiry' . . . is whether it would [have been] clear to [the Defendant] that [his or her] conduct was unlawful in the situation [they] confronted. Wood v. Moss, 572 U.S. 744, 757, 134 S. Ct. 2056, 2066, 188 L. Ed. 2d 1039 (2014). In this analysis, the plaintiff has "the burden of establishing that his or her rights were violated and that the law

concerning the proffered right 'was clearly established at the time the challenged conduct occurred.'"

Burritt v. Ditlefsen, 807 F. 3d 239, 249 (7th Cir. 2015).

In the present case, the individual Defendants do not have qualified immunity because they violated Doe's rights to receive procedural due process in a disciplinary hearing - a right that is clearly established. See Rainsberger v. Benner, 913 F. 3d 640, 647 (7th Cir. 2019); see also Purdue Univ., 928 F. 3d at 665. Accepting the allegations of the complaint as true, as we must, the individual Defendants violated the law in a number of ways. For example,

- As discussed above, Defendant Sylvia ignored clear Wisconsin law that required her, as the hearing examiner, to issue subpoenas to Plaintiff's witnesses. Defendant Sylvia refused to follow the law. As a result, Plaintiff did not have the opportunity to be heard – a constitutional bare minimum.

- Defendant Sylvia violated Plaintiff's constitutional due process rights and UWS 17.12(4)(c)3. through her *ex parte* communication with the Complainant. The Administrative Code says, "[t]he hearing examiner or committee… May take reasonable steps to maintain order, and to adopt procedures for the questioning of a witness appropriate to the circumstances of that witness's testimony, provided, however, whatever procedure is adopted, the complainant and respondent are allowed to effectively question the witness." Instead of taking reasonable steps, Defendant Sylvia had the Complainant make a unilateral decision regarding procedures.

- Defendant Sylvia's violation of UWS 17.12(4)(c)3 also violated Plaintiff's constitutional due process right to cross-examine the Complainant. Defendant Sylvia used Complainant's unilateral decision regarding questions to eliminate Plaintiff's ability to perform live, in-person cross examination – a constitutional right under Doe v. Baum.

- Defendant Kuether violated Plaintiff's due process rights to a fair and impartial investigation and hearing by not appropriately following Title IX guidelines. Specifically, Defendant Kuether lead [sic] the bias[ed] process against Plaintiff by naming a witness and reporting party of the complaint of the Complainant as the investigator of this matter.

- Under UWS 17, Defendant Leavitt is the "chief administrative officer" of the University and was tasked with overviewing the processes. However, Defendant Leavitt stood by idly allowing constitutional violations to run rampant in the investigation and hearing process.

Accordingly, Doe's Complaint, taken as true, proves two things: (1) the individual Defendants violated Plaintiff's constitutional rights to due process; and (2) those rights were clearly established at the time

Case 2:19-cv-01348-PP   Filed 11/08/19   Page 27 of 28   Document 31

of the alleged violation. Therefore, the individual Defendants cannot succeed to remove themselves from the sphere of accepting responsibility for their actions, pursuant to the qualified immunity defense at the Rule 12 (b)(6) juncture.

Finally, as demonstrated above, Doe has protected liberty and property interests that affords him the constitutional right of due process in his disciplinary hearing. The individual Defendants do not have the liberty of claiming this is a case of first impression like those individual defendants did in <u>Purdue Univ</u>. In <u>Purdue Univ.</u>, the Seventh Circuit ruled that the individual defendants had qualified immunity because it was the first "case addressing whether university discipline deprives a student of a liberty interest, the relevant legal rule was not 'clearly established,' and a reasonable university officer would not have known at the time of John's proceeding that her actions violated the Fourteenth Amendment." <u>Purdue Univ.</u>, 928 F. 3d at 666.

Here, that is not the case. All the constitutional rules Doe has shown that the individual Defendants have violated were clearly established at the time the decisions were made; thus, the individual Defendants cannot stand on the qualified immunity defense at this time. Accordingly, a motion to dismiss is not the correct pleading by which to address the Defendants' qualified immunity defense and, therefore, in that additional respect, their motion should be denied.

<u>CONCLUSION</u>

For the reasons stated herein, the Defendants' motion to dismiss should be denied.

**DEMPSEY EDGARTON, ST. PETER, PETAK, & ROSENFELDT LAW FIRM**
Attorneys for the **Plaintiff**

<u>/s/ Peter J. Culp</u>
Peter J. Culp, Bar No. 1022595
210 North Main Street, Oshkosh, WI 54903
Email:       peterc@dempseylaw.com
Telephone:   920-235-7300
Facsimile:   920-235-2011